**STATE, ex rel. SHAKER HEIGHTS PUBLIC LIBRARY, Relator, v MAIN, Respondent.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 21014. Decided March 1, 1948.

## OPINION

By HURD, PJ.
This is an original action in mandamus brought in this court on the relation of the Shaker Heights Public Library

against the Clerk of the Board of Education of the Shaker Heights' School District to require the Clerk to offer for sale certain notes authorized by the school board 'to be issued to provide funds for constructing a library building.

The action is heard on the petition of the relator, the answer of respondent and a demurrer to the answer by the relator. The relator demurs to the answer on the ground that said answer on its face is not sufficient in law.

The material facts as set forth in the pleadings are not in dispute and are as follows:

In 1921 there was created under authority of §7643-1 et seq, GC, as then in effect, the Cuyahoga County Library District. This library district consisted of taxing districts in Cuyahoga County not then furnished with tax supported public libraries and excluded the school district of Cleveland, Lakewood, East Cleveland and Cleveland Heights, all of which had tax-supported public libraries prior to 1921.

The Cuyahoga County Library District as so created included all of the territory of the Shaker Heights School District, which was then a village school district but became a city school district in 1930.

A Board of Library Trustees was duly organized for the county library district, and that board proceeded to provide public library service for the county library district, including a portion of that district within the Shaker Heights School District.

In 1937 the Board of Education of the Shaker Heights School District acting under the authority of §7635 et seq., GC, established a public library for the inhabitants of that school district, and created a board of library trustees which under the statute (§7638-1 GC) is designated "The Shaker Heights Public Library." The Budget Commission of Cuyahoga County immediately allocated to the Shaker Heights Public Library (under the authority of §5625-24 GC) a share of the classified property taxes collected in Cuyahoga county with which taxes (together with certain other funds) the Shaker Heights library trustees have established and operated a public library in the Shaker Heights School District.

So that at present two library boards are maintaining library facilities in Shaker Heights—the county library district board and the Shaker Heights board—and this condition has existed since the Shaker Heights board commenced operations shortly after its creation in 1937.

In 1945 the Shaker Heights library board caused to be submitted to the electors of the Shaker Heights school dis-

trict the question of issuing $150,000.00 of bonds to provide funds for constructing a library building. The procedure for issuing such bonds and using their proceeds is governed by §4005-2 et seq GC, which provides that a public library board may request its taxing authority (in this case the Shaker Heights Board of Education) to submit to the electors the question of issuing the bonds, and that if a favorable vote is secured, the board of education shall issue the bonds and turn the proceeds over to the library board which shall use them to construct the library building. The section also provides that the library board shall determine whether temporary notes shall be issued in anticipation of the issuance of bonds; and in this case the Shaker Heights library board determined that such notes should be issued.

The electors of the Shaker Heights school district approved the issuance of these bonds by an 80% majority (greatly in excess of the required 65% majority).

On Jan. 5, 1948, the Shaker Heights board of education adopted a resolution for the issuance and sale of the $150,000.00 of anticipatory notes, which resolution directed the clerk of the board to sell the notes at private sale, which method of sale is authorized by §2292-28 GC. The clerk refused to offer the notes for sale or to sell them although it is alleged that they could readily be sold if offered.

The clerk's only reason for refusal, as stated in his answer, is that at the time the Shaker Heights public library was established there was and there still is in lawful existence and functioning, a county library district including within its limits all of the territory of the Shaker Heights school district.

There are two issues raised by the demurrer:

1. Whether or not the board of education of the Shaker Heights school district had jurisdiction in 1937 to establish the Shaker Heights public library under the provisions of §7635 GC as it then existed.

2. Whether or not the repeal of §7635 GC and the contemporaneous enactments of new §§4840-1 to 4840-5 GC inclusive (H. B. 125, 122 Ohio Laws) either expressly or by implication terminated the existence of said Shaker Heights public library.

It is clear that if the Shaker Heights board of education lacked jurisdiction in 1937 to establish a public library because of the existence of the county library district, or, if the Shaker Heights library was lawfully established but its existence subsequently terminated by changes in the law ap-

plicable to such libraries, then there is no lawfully existing library board which could have initiated the proceedings to issue bonds and notes or could receive the proceeds thereof if they were sold, and the clerk would be right in refusing to sell them. On the other hand, if the Shaker Heights public library was lawfully established and had continued in lawful existence, the clerk is under a duty specially enjoined by law by reason of his office to sell the notes and the writ here prayed for ought to issue.

Coming now to a consideration of the first question, the statute under which the Shaker Heights board of education proceeded to organize the Shaker Heights public library is §7635 GC which in 1937 read as follows:

"**Sec. 7635 GC.** Management and control of library. The board of education of any city, village or rural school district, by resolution, may provide for the establishment, control and maintenance in such district of a public library free to all the inhabitants thereof. It shall provide for the management and control of such library by a board of trustees to be elected by it as herein provided, which board shall hold title to all such library property. Such boards of education shall also have the power for such purpose or purposes to purchase, erect, construct, enlarge, extend or improve a building or buildings for library purposes including a site or sites therefor, and equipping and finishing the same."

A careful analysis of this section clearly indicates a grant of power to the board of education of any city, village or rural school district to establish, control and maintain in such district a free public library. In pursuance of such purpose there is a further grant of power to purchase, construct and maintain buildings including sites therefor.

It would be difficult indeed to define a more comprehensive and all-embracing grant of power free from restrictions or limitations. It is true that as contended by the respondent the provisions are permissive and not mandatory. The argument of the respondent raises the question of whether the legislature by the various enactments pertaining to libraries intended that townships, municipal corporations, school districts and counties might all have over-lapping libraries and stresses the fact that under §3403 et seq., GC, municipal corporations may likewise have libraries; under §7635 GC school districts may also establish libraries and under §2976-11 GC the same authority is granted to counties.

It is conceded that an analysis of these sections confirms the jurisdiction of these respective taxing units to establish libraries. Provisions are also found for levying taxes to support them as well as other provisions for issuing bonds to provide funds to construct buildings. It is argued, however, that the services provided for are overlapping and that it is illogical that there should be such over-lapping services.

It is not within the province of the judicial branch of the government to question the wisdom of legislative enactments or even to question their logic. The primary purpose in the interpretation or construction of statutes is to give effect to the intention of the legislature as gathered from the provisions enacted by the application of well settled rules of interpretation; the ultimate function being to ascertain the legislative will.

As stated in 37 O. Jur., 514 parag. 278:

"The right of the courts to interpret a duly enacted statute is based upon some apparent uncertainty of meaning, some apparent ambiguity of terms, or some apparent conflict of provisions. Where the language of the statute is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation. To interpret what is already plain is not interpretation but legislation, which is not the function of the courts but of the general assembly."

It appears to this court that the language contained in the statutes above cited is generally so plain, clear and unambiguous that resort to accepted rules of judicial construction and interpretation is unnecessary.

With particular reference to §7635 GC granting authority for the establishment, control and maintenance of a free public library by the board of education of any city, village or rural school district for the inhabitants thereof, we repeat that the grant of power is clear and unequivocal and without limitation or qualification. Furthermore, as stated in the relator's brief, the legislature has at no time indicated any intention that the operation of a school library shall be exclusive in any territory. That is easily demonstrable not only by the language of the sections in question but also by the history of library statutes in Ohio.

At the time the formation of county library districts was first authorized by the enactment of §7643-1 GC in 1921, at least

four kinds of political subdivisions already were authorized to establish free public libraries for their inhabitants.

Townships were so authorized by §§3403 et seq., GC.; municipal corporations by §3620 GC; school districts by §7635 et seq., GC and counties by §§2976-11 et seq GC. In none of the stated sections of the General Code was there any restriction on the general powers of the subdivisions to provide library service and for all that appears in the several acts, all four kinds of libraries might exist in the same area as freely as counties, townships, municipalities and school districts have always so existed.

We conclude, therefore, in answer to the first question posed that the board of education of the Shaker Heights school district did possess in 1937 jurisdiction to create the Shaker Heights Public Library and that said library was lawfully established.

We come now to consider the second question as to whether or not there was a repeal of the grant of power or a termination of the authority either expressly or by implication by the repeal of §7635 GC and the enactment of the new general code §§4840-1 to 4840-5 incl.

The statutes under which the Shaker Heights library and county district library were respectively created (§7635 and §7642-1 GC) remained unchanged from 1937 to 1947. In 1947 the general assembly enacted a recodification and revision of laws relating to public libraries which materially changed the law on this subject. This Act is contained in 122 Ohio Laws, known as House Bill 125. It was passed May 14, 1947, approved June 2, 1947, filed in the office of the Secretary of State at Columbus, Ohio, on June 5, 1947, and became effective Sept. 4, 1947.

One of the principal changes effected by House Bill 125 was the termination of authority for the creation of township, municipal school district and county libraries.

Sec. 3403 GC authorizing the creation of township libraries; §7635 GC authorizing the creation of school district libraries; and §2976-11 to 2976-17 GC inclusive, authorizing the creation of county libraries, were all repealed. Sec. 3620 GC authorizing the creation and maintenance of municipal libraries was so amended as to eliminate the authority to establish such libraries.

As the statutes now stand, no kind of public library except a county district library can be created. Therefore The Shaker Heights Board of Education could not today create a school district public library as it did in 1937.

An examination of the new provisions of the general code with respect to school district libraries, as set forth in the General Code §4840-1 to 4840-5 inclusive, indicates a clear intendment of the legislature to continue the existence of school district libraries created before the effective date of the Act.

Pertinent parts of §4840-1 GC read as follows:

"**Sec. 4840-1 GC.** Control and Management of Library; Appointment of Trustees; Qualifications; Term; Vacancies; Compensation, Organization: **In any school district in which there has been established by resolution duly adopted by the board of education of such school district prior to the effective date of this act, a free public library,** such library shall be under the **control and management of a board of library trustees consisting of seven members.** No one shall be eligible to membership on such board of library trustees who is or has been for a year previous to his appointment a member of board of education making such appointment. Such trustees shall be qualified electors of the school district and shall be appointed by the board of education of the school district. Such trustees shall serve for a term of seven years and until their successors are appointed and qualified. All vacancies on such board of trustees shall be filled by the board of education by appointment for the unexpired term. The members of such board of trustees shall serve without compensation \* \* \*. **Such board of library trustees shall have the control and management of the school district free public library.** \* \* \* **Nothing in this section shall be construed to affect the term of any member of a board of library trustees of a school district free public library appointed prior to the effective date of this act.**" (Emphasis added)

An examination of this section shows a clear intention upon the part of the legislature to recognize free public libraries established in any school district **prior to the effective date of the act.** This is again indicated by the provisions of §§4840-2, 4840-3, 4840-4 GC and is further emphasized by §4840-5 GC which reads as follows:

"**4840-5** Board of Education may Purchase, Construct etc Building for Library Purposes: **The Board of Education of any city,** exempted village **or local school district in which there has been established by resolution duly adopted by such board of education, prior to the effective date of this act, a**

free public library, may purchase, erect, construct, enlarge, improve, equip or furnish a building or buildings for the purpose of rendering free public library service to the inhabitants of said school district." (Emphasis supplied)

By the section authority is given expressly to the board of education of any city or local school district prior to the effective date of the act to purchase, erect, construct or maintain buildings for free library purposes.

An analysis of all these statutes leads to the inevitable conclusion that while the legislature intended to prevent the creation of any more school district libraries, whether within or without county library districts, it intended equally to continue the existence of school district libraries already established.

In view of the very clear express provisions of the statute we think it unnecessary to discuss the proposition that the law generally does not favor repeal by implication which with sustaining authorities has been presented to us both by way of oral argument and by way of brief.

Respondent has adverted to the proposition that we are here in a large industrial center where energetic groups and taxing districts are more apt to be active and undertake the aggressive use of all of these statutes than is apt to occur in more rural or scattered counties, and argues that it should be borne in mind that these legislative enactments were adopted by the legislative board of the State of Ohio and not by Cuyahoga County alone, and therefore they should be interpreted in the light of state wide conditions rather than local.

It appears to us that whether considered upon the local level or state-wide level, the statutes in question perforce must have equal application and uniform operation throughout the state. The educational and cultural benefit of free public library service is inestimable. The imparting of knowledge, the diffusion of learning through schools, libraries and other cultural agencies, are matters of equal concern of the state whether the instrumentalities authorized are established in industrial or rural centers.

We are convinced that the legislature by the recent enactments did not intend to change the status quo ante and that to hold otherwise would be doing violence to the clearly expressed legislative intent.

It is our conclusion therefore that there was no repeal of the grant of power, or a termination of the authority either expressly or by implication by the repeal of §7635 GC,

.and the enactment of the provisions of House Bill 125, including §§4840-1 to 4840-5 GC inclusive.

On a consideration of the whole case, therefore, we hold that the relator's demurrer to the answer of respondent should be sustained.

It appearing that the respondent does not desire to plead further, there being no factual issues involved, the writ in mandamus is allowed. Judgment accordingly. Order See Journal.

MORGAN, J, SKEEL, J, concur.