The STATE of Ohio, Appellee

v.

DICKERSON, Appellant.

[Cite as State v. Dickerson, 179 Ohio App.3d 754, 2008-Ohio-6544.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22452.

Decided Dec. 12, 2008.

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and Jill R. Sink, Assistant Prosecuting Attorney, for appellee.

Bryan K. Penick, for appellant.

WALTERS, Judge.

{¶ 1} Defendant-appellant, Michael Dickerson, appeals a judgment of the Montgomery County Common Pleas Court denying his motion to suppress evidence. Dickerson asserts that his initial encounter with the police was not a proper stop and that the subsequent search of his person exceeded the permissible scope of a *Terry* search. Because we find that the pat-down search of Dickerson exceeded the scope permitted by *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, we must reverse the trial court.

{¶ 2} On January 27, 2007, Dayton Police Department Officers Blackburn and Orick were on routine patrol in a Dayton Metropolitan Housing Authority project known as DeSoto Bass. At the rear of 1611 West Stewart Street, the officers observed a parked vehicle, with two occupants. The rear license plate on the vehicle was hanging by one bolt. Officer Blackburn stopped his cruiser and activated the lights to effect a traffic stop of the vehicle for a violation of R.C. 4503.21(A), which provides that "[a]ll license plates shall be securely fastened so as not to swing, * * *." A violation of this statute is a minor misdemeanor.

{¶ 3} As Officer Blackburn approached Dickerson, the driver of the vehicle, he asked Dickerson to show his right hand, which was concealed from Blackburn's view. At this point, Dickerson ran and Officer Blackburn gave chase. Blackburn caught Dickerson approximately a block and a half later. He ordered Dickerson to lie spread-eagled on the ground so he could see his hands. Blackburn asked Dickerson why he ran, and Dickerson responded that it was because he had some

marijuana. Dickerson then directed Blackburn to where he had thrown the marijuana during the chase.

{¶ 4} At that point, Officer Howard arrived on the scene. Howard secured Dickerson while Blackburn retrieved the marijuana. After recovering the marijuana, Blackburn took Dickerson to Howard's cruiser to pat down Dickerson for weapons. In Dickerson's right front pocket, Blackburn felt a round hard object that he seized. The object was a prescription pill bottle containing Xanax. Dickerson was then arrested for possession of both the marijuana and the Xanax.

{¶ 5} After indictment, Dickerson pleaded not guilty and filed a motion to suppress. The trial court overruled the suppression motion, and Dickerson pleaded no contest to the charges. He was sentenced to five years of community control.

{¶ 6} Dickerson filed this timely appeal, challenging the trial court's judgment on the motion to suppress, setting forth two assignments of error for our review.

### First Assignment of Error

{¶ 7} The initial encounter with police was unconstitutional.

### Second Assignment of Error

{¶ 8} The search of Mr. Dickerson was unconstitutional.

{¶ 9} Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. *State v. Carter* (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965. Thus, a reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726. "Accepting these facts as true, [a reviewing court] must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the appropriate legal standard." *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906; *Ornelas v. United States* (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911; *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034. An appellate court reviews the trial court's application of the law de novo. *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034.

{¶ 10} Dickerson, while conceding that a police officer may legally stop a vehicle when he observes what he believes to be a traffic violation, argues first that the stop herein was not based upon a legitimate traffic violation. He bases this argument on the factual question of whether the license plate on Dickerson's

vehicle was able to swing. Dickerson's argument suggests that the officers must first determine whether the plate is freely "swinging" before they may legally detain the vehicle and the driver. Dickerson supports this argument with a number of cases dealing with obstructed license plates that have little or no bearing on the facts herein.

{¶ 11} R.C. 4503.21(A) provides that "[a]ll license plates shall be securely fastened so as not to swing, * * *." The evidence is undisputed that Dickerson's license plate was secured by only one bolt and that it hung at an angle, resting on the vehicle's bumper. Whether the plate was swinging at the moment of the stop is irrelevant. And, there is no requirement that the officer investigate the license plate prior to temporarily detaining the driver to investigate and issue a citation.

{¶ 12} The law governing investigative stops of automobiles is clear. The Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, prohibit any governmental search or seizure unless supported by an objective justification. *Terry*, 392 U.S. at 20–21, 88 S.Ct. 1868, 20 L.Ed.2d 889; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271. Thus, if the specific and articulable facts indicate to the officer that the driver of an automobile may be committing a criminal act, or if the officer has observed what he believes to be a traffic violation, then the officer can justifiably make an investigative stop. *State v. Carlson* (1995), 102 Ohio App.3d 585, 593, 657 N.E.2d 591; *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 9, 665 N.E.2d 1091; *State v. Evans* (1993), 67 Ohio St.3d 405, 618 N.E.2d 162, certiorari denied (1993), 510 U.S. 1166, 114 S.Ct. 1195, 127 L.Ed.2d 544.

{¶ 13} And, while Officer Blackburn testified that he made the stop because it was in a high-crime area where he had made other arrests for drugs and weapons, the reasonableness of a traffic stop does not depend on the motive of the police officer making the stop. *Whren v. United States* (1996), 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89.

{¶ 14} Because Dickerson's license plate was hanging from one corner, resting on the bumper of the automobile, Officer Blackburn had a reasonable, articulable suspicion that Dickerson was in violation of R.C. 4503.21, and the detention to write a citation was therefore reasonable.

{¶ 15} Next, Dickerson claims that the search of his person went beyond the permissible scope of a *Terry* search and seizure. He argues that a *Terry* search must be limited to that which is necessary for the discovery of weapons, and that it cannot be employed by the officer to search for evidence of crime.

{¶ 16} At the point in time that the *Terry* pat-down was conducted, Dickerson had already admitted to a minor misdemeanor criminal violation for the possession of marijuana, which justified Blackburn's continued detention of Dickerson.

{¶ 17} Nonetheless, even if an investigatory stop and detention of a suspect is justified, it does not automatically follow that a frisk for weapons is also warranted. *State v. Martin*, Montgomery App. No. 20270, 2004-Ohio-2738, 2004 WL 1178737. A pat-down search for weapons requires some reasonable grounds to believe that the suspect is armed and dangerous. *Andrews*, 57 Ohio St.3d at 89, 565 N.E.2d 1271.

{¶ 18} However, in *Martin*, we observed that "Ohio courts have long recognized that persons who engage in illegal drug activities are often armed with a weapon." *Martin*, 2004-Ohio-2738, 2004 WL 1178737, ¶ 17. The Ohio Supreme Court has held that "[t]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed. * * * 'The nature of narcotics trafficking today reasonably warrants the conclusion that a suspected dealer may be armed and dangerous.'" *Evans*, 67 Ohio St.3d at 413, 618 N.E.2d 162, quoting *United States v. Ceballos* (E.D.N.Y.1989), 719 F.Supp. 119, 126. In that light, this court has consistently held that an officer's fear of violence when investigating drug activity is a legitimate concern that will justify a pat-down search for weapons. *Martin*, 2004-Ohio-2738, 2004 WL 1178737, at ¶ 17; *State v. Taylor* (1992), 82 Ohio App.3d 434, 612 N.E.2d 728; *State v. Lindsey* (Jun. 23, 2000), Montgomery App. No. 18073, 2000 WL 799733. Additionally, we would note that Officer Blackburn testified that Dickerson's furtive movements with his right hand, prior to running, gave rise to a concern that Dickerson may have been attempting to conceal a weapon. Therefore, under the facts herein, Officer Blackburn was further justified in conducting the weapons pat-down of Dickerson's person.

{¶ 19} The United States Supreme Court recognized in *Terry* that a police officer may make a limited search in order to protect himself and the public. "'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' he may conduct a limited protective search for concealed weapons. * * * The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law. So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." *Adams v. Williams* (1972), 407 U.S. 143, 145–146, 92 S.Ct. 1921, 32 L.Ed.2d 612, quoting *Terry*, 392 U.S. at 24, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 20} The Supreme Court of Ohio has also addressed the issue of the scope of a permissible *Terry* pat-down. In *Evans*, they pointed out that "'[a] search for

weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. * * * Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby * * *.'" *Evans,* 67 Ohio St.3d at 414, 618 N.E.2d 162, quoting *Terry,* 392 U.S. at 25–26, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 21} Applying that standard, the Supreme Court pointed out that "once the officer determines from his sense of touch that an object is not a weapon, the pat-down frisk must stop. The officer, having satisfied himself or herself that the suspect has no weapon, is not justified in employing *Terry* as a pretext for a search for contraband." *Evans,* 67 Ohio St.3d at 414, 618 N.E.2d 162.

{¶ 22} Officer Blackburn's testimony indicates that upon patting down Dickerson's clothing, he felt something hard in his coat pocket and that he did not know what it was. He could not testify that it felt like a weapon or that it was contraband; his testimony was that "[i]t could have been anything." He also testified that he could not determine that the pill bottle that he retrieved from this pocket contained contraband until he opened it. And, at the point of opening it, it was apparent that it was not a weapon.

{¶ 23} Being mindful of the admonition in *Evans,* we hold that under the facts presented herein, when there is no testimony by the officer that would tend to establish that a prescription pill bottle was a weapon or was likely to conceal weapons inside, the opening and searching of the object exceeded the scope of a permissible *Terry* pat-down. Therefore, we sustain the second assignment of error.

{¶ 24} For the foregoing reasons, the judgment of the Montgomery County Common Pleas Court is hereby reversed, and the cause is remanded for further proceedings consistent herewith.

Judgment reversed
and cause remanded.

WOLFF, P.J., and GRADY, J., concur.

SUMNER E. WALTERS, J., retired, of the Third Appellate District, sitting by assignment.