[Cite as *State v. Culberson*, 197 Ohio App.3d 705, 2012-Ohio-448.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

THE STATE OF OHIO,

Appellant,

v.

CULBERSON,

Appellee.

:    JUDGES:
:    Hon. W. Scott Gwin, P.J.
:    Hon. John W. Wise, J.
:    Hon. Julie A. Edwards, J.
:
:    Case No. 2011AP030016
:
:    O P I N I O N

CHARACTER OF PROCEEDING:          Criminal Appeal from Tuscarawas
County Court of Common Pleas,
Case No. 2010CR050138

JUDGMENT:          Affirmed

DATE OF JUDGMENT ENTRY:          February 3, 2012

Ryan D. Styer, Tuscarawas County Prosecuting Attorney, and Michael J. Ernest, Assistant Prosecuting Attorney, for appellant.

Mark Perlaky and Gary I. Greig, Assistant Public Defenders, for appellee.

GWIN, Presiding Judge.

{¶ 1} Appellant, the state of Ohio, appeals a judgment of the Tuscarawas County Common Pleas Court granting appellee's, Teddy L. Culberson's, motion to suppress.

STATEMENT OF THE FACTS AND CASE

{¶ 2} On May 17, 2010, Lt. Nakia Hendrix of the Ohio State Highway Patrol was traveling south on Interstate 77 through Tuscarawas County at 3:56 a.m. on his way to work at the Cambridge Post of the highway patrol. Hendrix was traveling 55 m.p.h. when he passed appellee's vehicle. He noticed that the vehicle had a West Virginia license plate that was canted because it was affixed by only one screw in the upper corner. Hendrix slowed down to 30 m.p.h. until appellee passed him. He then initiated a traffic stop for having an insecure license plate.

{¶ 3} After stopping the vehicle, Hendrix discovered that appellee did not have a driver's license and the vehicle did not belong to appellee. After an unsuccessful attempt to contact the owner of the vehicle, Hendrix arranged to have it towed. While conducting an administrative inventory of the vehicle prior to the arrival of the tow truck, Hendrix located contraband in the trunk.

{¶ 4} Appellee was indicted by a Tuscarawas County grand jury for possession of drugs in violation of R.C. 2925.11(A)(C)(3)(d), namely marijuana in an amount exceeding 1,000 grams but less than 5,000 grams. On December 10, 2010, appellee filed a motion to suppress on the basis that Hendrix had lacked a reasonable suspicion of criminal activity to stop the vehicle.

{¶ 5} The trial court held an evidentiary hearing on March 22, 2011. Following this hearing, the court granted the motion to suppress, finding:

**{¶ 6}** "[T]he phrase in the statute 'all license plates shall be securely fastened so as not to swing * * *' in the opinion of the undersigned, means, in the negative, that if a license plate is not swinging then it *is* sufficiently secure to satisfy the statutory mandate until it does actually commence swinging. Thus, again in the opinion of the undersigned, a law enforcement officer in Ohio does *not* have sufficient, legal probable cause to effect a traffic stop of a motor vehicle whose license plate(s) is/are securely fastened, to the extent that the plate(s) is/are not in the actual act of 'swinging.' In other words, any license plate not actually swinging is, as a matter of law, 'securely fastened.'" (Emphasis sic.)

**{¶ 7}** The state assigns a single error on appeal:

**{¶ 8}** "The trial court erred in granting the appellee's motion to suppress as reasonable suspicion existed for the traffic stop at issue."

I

**{¶ 9}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. See *State v. Dunlap*, 73 Ohio St.3d 308,314, 652 N.E.2d 988 (1995); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. See *Burnside; Dunlap*; *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist.1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist.1996). However, once this court has accepted those facts as true, it must

independently determine as a matter of law whether the trial court met the applicable legal standard. See *Burnside,* citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997); See generally *United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas*. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas* at 698.

{¶ 10} A court of appeals has jurisdiction to entertain the state's appeal from a trial court's decision to suppress evidence only when the state has complied with Crim.R. 12(K). *State v. Perez,* Hamilton App.Nos. C-040363, C-040364, and C-040365, 2005-Ohio-1326, ¶ 12, citing *State v. Buckingham*, 62 Ohio St.2d 14, 402 N.E.2d 536 (1980), syllabus (interpreting former Crim.R. 12(J)).

{¶ 11} Crim.R. 12(K) states:

{¶ 12} "When the state takes an appeal as provided by law from an order suppressing or excluding evidence * * * the prosecuting attorney shall certify that both of the following apply:

{¶ 13} "(1) the appeal is not taken for the purpose of delay;

{¶ 14} "(2) the ruling on the motion or motions has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed.

{¶ 15} "The appeal from an order suppressing or excluding evidence shall not be allowed unless the notice of appeal and the certification by the prosecuting attorney are

filed with the clerk of the trial court within seven days after the date of the entry of the judgment or order granting the motion."

{¶ 16} In the case at bar, a certifying statement by the prosecutor as outlined in Crim.R. 12(K) was filed in this court on March 29, 2011.

{¶ 17} The Ohio Supreme Court has emphasized that probable cause is not required to make a traffic stop; rather, the standard is reasonable and articulable suspicion. *State v. Mays,* 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 23. Further, neither the United States Supreme Court nor the Ohio Supreme Court considered the severity of the offense as a factor in determining whether the law-enforcement official had a reasonable, articulable suspicion to stop a motorist.

{¶ 18} Hendrix stopped appellee's vehicle for violating R.C. 4503.21(A), which provides:

{¶ 19} "No person who is the owner or operator of a motor vehicle shall fail to display in plain view on the front and rear of the motor vehicle the distinctive number and registration mark, including any county identification sticker and any validation sticker issued under sections 4503.19 and 4503.191 of the Revised Code, furnished by the director of public safety * * *. All license plates shall be securely fastened so as not to swing, and shall not be covered by any material that obstructs their visibility."

{¶ 20} It is undisputed in this case that the license plate was not swinging when Hendrix stopped appellee's vehicle. The plate was secured by one bolt in the upper corner, and was "canted." Hendrix also testified that when he stopped the vehicle, he believed the statute prohibited the plate from swinging *or hanging*.

**{¶ 21}** In *State v. Dickerson*, 179 Ohio App.3d 754, 2008-Ohio-6544, 903 N.E.2d 697, the Court of Appeals for the Second District found a stop to be supported by a reasonable suspicion of criminal activity when a license plate was secured by only one bolt but not actively swinging:

**{¶ 22}** "R.C. 4503.21(A) provides that '[a]ll license plates shall be securely fastened so as not to swing, * * *.' The evidence is undisputed that Dickerson's license plate was secured by only one bolt and that it hung at an angle, resting on the vehicle's bumper. Whether the plate was swinging at the moment of the stop is irrelevant. And, there is no requirement that the officer investigate the license plate prior to temporarily detaining the driver to investigate and issue a citation.

**{¶ 23}** "* * *

**{¶ 24}** "Because Dickerson's license plate was hanging from one corner, resting on the bumper of the automobile, Officer Blackburn had a reasonable, articulable suspicion that Dickerson was in violation of R.C. 4503.21, and the detention to write a citation was therefore reasonable." *Id.* at ¶ 11, 14.

**{¶ 25}** In the case at bar, the trial court distinguished *Dickerson* on the basis that although the plate in that case was not in the process of swinging when observed by the officer, one end of the plate had fallen from the bolt and was resting on the vehicle bumper. Thus, the officer was able to observe before making the stop in *Dickerson* that the plate was able to swing and was only stopped by resting upon the vehicle bumper. "Thus, in *Dickerson,* the plate was not 'securely fastened' so as not to swing."

**{¶ 26}** In the case at bar, the trial court further noted that the phrase "all license plates shall be securely fastened so as not to swing" "means, in the negative, that if a

license plate is not swinging then it *is* sufficiently secure to satisfy the statutory mandate until it does actually commence swinging." (Emphasis sic.) We agree with the trial court's analysis.

{¶ 27} The primary purpose of the judiciary in the interpretation or construction of a statute is to give effect to the intention of the legislature, as gathered from the provisions enacted by application of well-settled rules of construction or interpretation. *Henry v. Cent. Natl. Bank*, 16 Ohio St.2d 16, 20, 242 N.E.2d 342 (1968), quoting *State ex rel. Shaker Hts. Pub. Library v. Main*, 83 Ohio App. 415, 80 N.E.2d 261(8th Dist.1948). It is a cardinal rule that a court must first look to the language itself to determine the legislative intent. *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105, 304 N.E.2d 378 (1973). If that inquiry reveals that the statute conveys a meaning that is clear, unequivocal, and definite, at that point the interpretive effort is at an end, and the statute must be applied accordingly. *Id.* at 105-106. In determining legislative intent, it is the duty of the court to give effect to the words used, not to delete words used or to insert words not used. *Columbus–Suburban Coach Lines v. Pub. Util. Comm*, 20 Ohio St.2d 125, 127, 254 N.E.2d 8 (1969). *See also In re McClanahan,* 5th Dist. No. 2004AP010004, 2004-Ohio-4113, 2004 WL 1758408, ¶ 16.

{¶ 28} R.C. 1.42 states: "1.42 Common and technical usage. Words and phrases shall be read in context and construed according to the rules of grammar and common usage. Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

{¶ 29} The word "shall" is usually interpreted to make the provision in which it is contained mandatory. *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St. 2d 102, 107,

271 N.E.2d 834 (1971). In contrast, the use of the word "may" is generally construed to make the provision in which it is contained optional, permissive, or discretionary. *Id.* The words "shall" and "may" when used in statutes are not automatically interchangeable or synonymous. *Id.* To give the "may" as used in a statute a meaning different from that given in its ordinary usage, it must clearly appear that the legislature intended that it be so construed from a review of the statute itself. *Id. In re McClanahan* at ¶ 17.

**{¶ 30}** Generally the word "swing" is defined as "to move easily to one direction and then to the other from a fixed point, or to cause something to move this way," http://www.dictionary.cambridge.org/swing (accessed Jan. 10, 2012); "swing" "1a : to cause to move vigorously through a wide arc or circle<*swing* an ax>b : to cause to sway to and fro (1): to cause to turn on an axis (2): to cause to face or move in another direction <*swing* the car into a side road>2: to suspend so as to permit swaying * * *," *Merriam-Webster.com.* http://www.merriam-webster.com/dictionary/swing (accessed on Jan. 12, 2012).

**{¶ 31}** The language of R.C. 4503.21(A) is clear and unambiguous on its face and needs no interpretation. Had the General Assembly intended to prohibit a "canted" license plate, a "slanted" license plate, or "a license plate secured by only one of two bolts," it could have easily done so by including the words in the statute. To find otherwise would require this court to rewrite R.C. 4503.21(A) to insert words such as "canted," "slanted," "askew," "ajar," or "held in place by one bolt" into that section of the statute.

{¶ 32} Accordingly, this court concludes that the Ohio General Assembly did not intend to include a license plate securely fastened on by one screw in the upper corner within the prohibition that all license plates be securely fastened so as not to swing contained in R.C. 4503.21(A).

{¶ 33} Appellant's sole assignment of error is overruled.

{¶ 34} The judgment of the Court of Common Pleas, Tuscarawas County, Ohio is affirmed.

Judgment affirmed.

WISE, J., concurs.

EDWARDS, J., dissents.

EDWARDS, Judge, dissenting.

{¶35} I respectfully dissent from the majority opinion.

{¶36} In *State v. Dickerson*, 179 Ohio App.3d 754, 2008-Ohio-6544, 903 N.E.2d 697, the Court of Appeals for the Second District expressly stated that whether the plate was swinging at the moment of the stop is irrelevant, and there is no requirement that the officer investigate the license plate prior to temporarily detaining the driver to investigate. *Id.* at ¶ 11. Because the license plate was hanging from one corner and resting on the bumper of the automobile, the officer had a reasonable, articulable suspicion that Dickerson was in violation of R.C. 4503.21. *Id.* at ¶ 14.

{¶37} The trial court distinguished *Dickerson* on the basis that although the plate in that case was not in the process of swinging when observed by the officer, the plate had obviously swung from its original location when secured because it was lodged

against the bumper, preventing it from continued swinging. I would find this to be a distinction without a difference. In the instant case, the plate was secured by only one bolt and was canted, thus the plate had the potential to swing even though it was not in the process of swinging at the time it was observed by Hendrix. Further, because the plate was canted, it could have swung from its original location, exactly as the plate in *Dickerson* had swung from its original location. I would not read the language "so as not to swing" in R.C. 4503.21(A) as narrowly as the majority decision, which does not allow an officer to stop and investigate unless he or she sees the plate in the motion of swinging. I would find that the language could be interpreted that the plate should be secured so that it is not able to swing, even if it is not actively swinging at the time of the stop.

{¶38} I would sustain the assignment of error and reverse the decision of the trial court.