[Cite as *State v. Kirby*, 2024-Ohio-2543.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2023 CA 00054 |
| ALYSSA KIRBY | |
| Defendant-Appellant | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Fairfield Municipal Court,<br>Case No. TRC 2305314 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | July 1, 2024 |

APPEARANCES:

For Plaintiff-Appellee

ANDREW D. SEMELSBERGER
City of Lancaster Law Director
& City Prosecutor's Office
136 West Main Street
P.O. Box 1008
Lancaster, Ohio 43130

For Defendant-Appellant

AARON CONRAD
Conrad / Wood
120 East Main Street, Suite #200
Lancaster, Ohio 43130

*Hoffman, J.*

{¶1} Defendant-appellant Alyssa Kirby appeals the judgment entered by the Fairfield Municipal Court convicting her following her plea of no contest to operating a vehicle while intoxicated (hereinafter "OVI") ,(R. C. 4511.19(A)(1)(a)), and sentencing her accordingly. Plaintiff-appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2} At 2:54 a.m. in Lancaster, Ohio, on July 29, 2023, Deputy Justin Mann of the Fairfield County Sheriff's Department was traveling behind a vehicle driven by Appellant. The deputy observed the vehicle make several rapid stops at stop signs, then sit stationary at the stop signs for ten to fifteen seconds before proceeding. Deputy Mann observed Appellant's vehicle make a wide left turn, nearly striking the curb. The deputy also noticed Appellant's rear license plate was attached with only one bolt on the right side, was bent at the top, and was hanging down with its left side against the bumper of the vehicle. Deputy Mann could read the number on the license plate and see the registration sticker.

{¶3} Deputy Mann stopped Appellant's vehicle because the license plate was not properly attached. Appellant stopped the vehicle approximately fifteen seconds after the deputy activated his overhead lights, turning into an alley rather than pulling to the side of the road. Deputy Mann detected a strong odor of alcohol coming from inside the vehicle. The deputy observed Appellant's eyes were bloodshot and glassy, her speech was slurred or "thick tongued," and she had poor finger dexterity when retrieving her license and registration.

{¶4} Deputy Mann asked Appellant to step out of the vehicle in order to conduct field sobriety tests, and to separate her from the passenger to determine if the odor of

alcohol was coming from Appellant. Upon separating Appellant from her passenger, he detected a moderate odor of alcohol coming from her breath. Appellant admitted to having a few drinks. Based on her performance on field sobriety tests, Deputy Mann placed Appellant under arrest for OVI.

{¶5} Appellant was charged with OVI, operating a vehicle with a prohibited breath alcohol content, and improper display of a license plate. Appellant moved to suppress the evidence obtained as a result of the stop on the basis the officer lacked a reasonable suspicion of criminal activity to justify stopping the vehicle, and further lacked a reasonable suspicion of criminal activity to justify detaining her for field sobriety tests. Following a hearing, the trial court overruled the motion to suppress. Appellant entered a plea of no contest to OVI, and the remaining charges were dismissed. The trial court convicted her upon her plea and sentenced her, in part, to 180 days in jail with 177 days suspended, with successful completion of 72 hours of a Driver Intervention Program in lieu of serving the three days in jail. It is from the December 5, 2023 judgment of the trial court Appellant prosecutes her appeal, assigning as error:

THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO SUPPRESS.

{¶6} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 2003-Ohio-5372, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap*, 1995-Ohio-243;

*State v. Fanning*, 1 Ohio St.3d 19, 20 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long*, 127 Ohio App.3d 328, (4th Dist. 1998); *State v. Medcalf,* 111 Ohio App.3d 142, (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra, citing State v. McNamara,* 124 Ohio App.3d 706, (4th Dist. 1997); *See, generally*, *United States v. Arvizu*, 534 U.S. 266 (2002); *Ornelas v. United States,* 517 U.S. 690, (1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas, supra.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698.

**{¶7}** Appellant first argues the trial court applied the incorrect legal standard to the traffic stop. The trial court found the officer had a reasonable suspicion of criminal activity to justify stopping the vehicle. Appellant argues because the stop was a non-investigative stop rather than an investigative stop, the officer had to have probable cause to stop the vehicle, citing *Dayton v. Erickson*, 76 Ohio St. 3d 3 (1996) and *Alabama v. White,* 496 U.S. 325 ((1990).

**{¶8}** Neither case cited by Appellant directly distinguishes an investigatory stop from a non-investigatory stop, specifically requiring probable cause for a non-investigatory stop. In *Erickson*, the officer had probable cause for the stop, and the Ohio Supreme Court's opinion considered whether the stop was valid if the stop was pretextual because the officer had an ulterior motive for the stop. In *White*, the United States

Supreme Court considered whether an informant's tip was sufficiently reliable to support a reasonable suspicion of criminal activity to justify a stop.

{¶9}    The *White* court did not overrule *Delaware v. Prouse,* 440 U.S. 648, 663 (1979), in which the court held "except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment."  Subsequent to *Erickson*, the Ohio Supreme Court recognized while the officer in *Erickson* possessed probable cause for the stop, *Erickson* did not require probable cause:

> Appellant argues that an officer is warranted in stopping a vehicle only if the officer has probable cause to believe that a motorist has committed a crime.  Appellant cites *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, in which we held that "a traffic stop based upon probable cause is not unreasonable, and that an officer who makes a traffic stop based on probable cause acts in an objectively reasonable manner." *Id.* at 11, 665 N.E.2d 1091. Further, we held that "[w]here a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some

ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity." *Id.* at syllabus.

Appellant's reliance on *Erickson*, and on *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89, is misplaced. Probable cause is certainly a complete justification for a traffic stop, but we have not held that probable cause is required. Probable cause is a stricter standard than reasonable and articulable suspicion. *State v. Evans* (1993), 67 Ohio St.3d 405, 411, 618 N.E.2d 162. The former subsumes the latter. Just as a fact proven beyond a reasonable doubt has by necessity been proven by a preponderance, an officer who has probable cause necessarily has a reasonable and articulable suspicion, which is all the officer needs to justify a stop. *Erickson* and *Whren* do not hold otherwise.

**{¶10}** *State v. Mays,* 2008-Ohio-4539, ¶¶ 22-23.

**{¶11}** Citing *Mays*, this Court has emphasized the appropriate legal standard for a traffic stop is reasonable articulable suspicion, and probable cause is not required. *State v. Miller*, 2012-Ohio-6147 (5th Dist.). We find the trial court applied the correct legal standard in this case.

**{¶12}** Appellant next argues the trial court erred in finding the officer had a reasonable suspicion of criminal activity to justify stopping her vehicle based on her license plate being improperly secured, relying on this Court's opinion in *State v. Culberson*, 2012-Ohio-448 (5th Dist.).

**{¶13}** R.C. 4503.21 provides:

(A)(1) No person who is the owner or operator of a motor vehicle shall fail to display in plain view on the rear of the motor vehicle a license plate that displays the distinctive number and registration mark assigned to the motor vehicle by the director of public safety, including any county identification sticker and any validation sticker when required by and issued under sections 4503.19 and 4503.191 of the Revised Code. However, a commercial tractor shall display the license plate on the front of the commercial tractor.

(2) The license plate shall be securely fastened so as not to swing, and shall not be covered by any material that obstructs its visibility.

**{¶14}** In *Culberson*, the license plate was securely fastened by one screw in the upper corner. The plate was canted, but was not swinging when the officer stopped the car. The trial court found the officer did not have a reasonable suspicion of criminal activity to justify stopping the vehicle because the plate was not swinging, and was unable to swing. In so holding, the trial court distinguished the case from the holding in *State v. Dickerson*, 2008-Ohio-6544 (2nd Dist.):

In the case at bar, the trial court distinguished *Dickerson* on the basis that although the plate in that case was not in the process of swinging when observed by the officer, one end of the plate had fallen from the bolt and was resting on the vehicle bumper. Thus, the officer was able to observe before making the stop in *Dickerson* that the plate was able to swing and

was only stopped by resting upon the vehicle bumper. "Thus, in *Dickerson*, the plate was not 'securely fastened' so as not to swing."

**{¶15}** *Culberson* at ¶25.

**{¶16}** This Court affirmed, holding as follows:

> The language of R.C. 4503.21(A) is clear and unambiguous on its face and needs no interpretation. Had the General Assembly intended to prohibit a "canted" license plate, a "slanted" license plate, or "a license plate secured by only one of two bolts," it could have easily done so by including the words in the statute. To find otherwise would require this court to rewrite R.C. 4503.21(A) to insert words such as "canted," "slanted," "askew," "ajar," or "held in place by one bolt" into that section of the statute.

**{¶17}** *Id.* at ¶ 31.

**{¶18}** Judge Edwards dissented, stating the plate had obviously swung from its original position, and the fact the plate was lodged and unable to continue swinging, as opposed to the plate in *Dickerson* which was able to continue swinging, was a distinction without a difference. *Id.* at ¶ 37.

**{¶19}** In *State v. Sheets*, 2020-Ohio-6801 (5th Dist.), this Court revisited *Culberson*. In *Sheets*, the officer testified the plate "had already swung or kind of fell, with the top right falling down, it wasn't secured." The officer noted the plate was stopped from slanting further because of indents on the plate bracket, noting the right corner of

the side bracket was the only thing preventing the plate from swinging further down. This Court found the officer had a reasonable suspicion of criminal activity to justify stopping the vehicle, distinguishing *Culberson* as follows:

> In affirming the trial court's decision, the majority of this Court in *Culberson* discussed the case relied upon by the trial court in the case sub judice, *State v. Dickerson*, 179 Ohio App.3d 754, 2008-Ohio-6544. The majority in *Culberson* quoted the distinction drawn by the trial court from the *Dickerson* case where the license plate was "resting" on the vehicle bumper, and "able to swing." As pointed out by Judge Edwards in her dissent in *Culberson*, the trial court further distinguished *Dickerson* because Culberson's license place was "lodged" against the bumper, "preventing it from continued swinging." (Emphasis added). Judge Edwards noted the license plate's "potential to swing" in concluding the trial court in *Culberson* erred in suppressing the evidence of drugs.
>
> We disagree with Judge Edwards' conclusion whether the license plate was lodged and prevented from continued swinging versus merely resting on the bumper with the potential to swing is a "distinction without a difference." It appears in the case sub judice, Appellant's license plate was not lodged and prevented from swinging as was the case in *Culberson*, but was stopped from slanting down any further because of the indents in the license plate bracket (more analogous to "resting" as compared to "lodged")

and had the potential to swing as demonstrated by Appellant's being able to put the license plate back up.

**{¶20}** *Sheets* at ¶¶ 14-15.

**{¶21}** Deputy Mann testified he observed the license plate on the rear of Appellant's vehicle was "only held on by one bolt and the top of it was bent forward so it was improperly displayed." Supp. Tr. 7-8. As noted by the trial court, the picture of the plate admitted into evidence at the hearing showed it had fallen on one side, and was resting against the bumper. We find this case is analogous to *Sheets* and to *Dickerson*, in which the license plate was not securely fastened but was merely resting on the bumper, with the potential to swing. We find the trial court did not err in finding the deputy had a reasonable suspicion of criminal activity to justify the stop based on the condition of the license plate.

**{¶22}** Finally, Appellant argues the trial court lacked a reasonable suspicion of criminal activity to further detain her to conduct field sobriety tests.

**{¶23}** A request made of a validly detained motorist to perform field sobriety tests is generally outside the scope of the original stop, and must be separately justified by other specific and articulable facts showing a reasonable basis for the request. *State v. Toure,* 2023-Ohio-2559 (5th Dist.), ¶ 21. it is well settled Ohio law where a stop is initiated and the odor of alcohol is combined with glassy or bloodshot eyes and further indicia of intoxication, such as an admission of having consumed alcohol, reasonable suspicion exists. *State v. Bright*, 5th Dist. Guernsey No. 2009-CA-28, 2010-Ohio-1111, ¶ 22.

{¶24} In the instant case, Deputy Mann observed issues with Appellant's driving which did not rise to the level of violation of traffic laws, but in his experience were indicia of impaired driving. Appellant rapidly came to a stop when approaching stop signs, but would then sit at the sign without proceeding for ten to fifteen seconds. He observed Appellant make a wide left turn, which was not a lane violation because there was only one lane on the roadway, but her vehicle traveled all the way to the curb before correcting back to the lane of travel. After stopping the vehicle based on the license plate violation, the officer noted a strong odor of alcohol coming from the vehicle. During his conversation with Appellant, Deputy Mann noted she had "thick-tongued" or slurred speech, and glassy, bloodshot eyes. Supp. Tr. 10-11. When he asked for her license, registration and proof of insurance, she displayed poor finger dexterity.

{¶25} At this point, the officer asked Appellant to step out of the vehicle. An officer may ask a person to exit a vehicle during a lawful traffic stop without having reasonable suspicion of any further criminal activity. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). After Appellant was separated from the passenger, the deputy noted an "obvious" odor of alcohol coming from Appellant's breath, and she admitted to consuming a few drinks. Supp. Tr. 13. Based on all of the circumstances testified to by the deputy, we find he had a reasonable suspicion of criminal activity to justify further detention of Appellant for field sobriety testing.

{¶26} The assignment of error is overruled.  The judgment of the Fairfield Municipal Court is affirmed.


By: Hoffman, J.

Delaney, P.J.  and

Wise, J. concur