[Cite as *State v. Jackson*, 2015-Ohio-3607.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25960 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2012-CR-1088 |
| v. | : | |
| | : | (Criminal Appeal from |
| ALBERT L. JACKSON, JR. | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of September, 2015.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. No. 0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee

WILLIAM O. CASS, JR., Atty. Reg. No. 0034517, 135 West Dorothy Lane, Suite 209, Kettering, Ohio 45429
     Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Albert Jackson appeals from his conviction and

sentence for Trafficking in Marijuana. He contends that the trial court erred by overruling his motion to suppress evidence upon the ground that the marijuana was obtained as a result of an unlawful search and seizure.

{¶ 2} We conclude that the trial court did not err in overruling Jackson's motion to suppress evidence. The police officer who stopped Jackson observed at least two traffic violations, which provided a basis for a stop. Jackson did not have a valid driver's license, and there was an outstanding warrant for his arrest. He was the sole occupant of the car he was driving, but did not own it. The owner of the car was not present at the scene, and the officer made an authorized decision to tow the car pursuant to the Sinclair Community College Police Department's tow policy. An inventory search conducted prior to the tow led to the disclosure of individual bags of marijuana, along with additional plastic bags, and a digital scale. Additionally, the officer, who was trained in the detection of marijuana, had probable cause to search the vehicle upon smelling raw marijuana emanating therefrom.

{¶ 3} Accordingly, the judgment of the trial court is Affirmed.

## I. The Stop

{¶ 4} In April 2012, Sinclair Community College Police Department Officer Steven Hupp was on routine patrol in his marked cruiser. At about 9:30 a.m., he was traveling northbound on Wilkinson Street, when he observed a black Chevy Tahoe traveling east on Fifth Street toward Wilkinson. Hupp had a green light at the intersection, while Jackson had a red light. Jackson did not stop at his red light, and proceeded to turn left

onto Wilkinson directly in front of Hupp's cruiser.[1] Hupp had to apply his brakes in order to avoid a collision. Hupp then began to run the vehicle tags on his computer, when he noticed the Tahoe change lanes without signaling in an intersection. At that point, Hupp initiated a traffic stop.

{¶ 5} Hupp asked Jackson for his driver's license; Jackson only had an Ohio Identification Card, because his license was suspended. Hupp also learned, upon running Jackson's information, that there was an outstanding warrant for Jackson's arrest. It was also determined that the vehicle was registered to Jackson's daughter. At that point, Hupp decided to arrest Jackson. As Jackson exited the Tahoe, Hupp was able to smell the "distinct odor of [fresh] marijuana" emanating from the vehicle. Jackson was handcuffed, and placed into the back seat of another patrol car that had arrived on the scene. Hupp intended to have the vehicle towed pursuant to Sinclair Police Department Policy, so he began to execute an inventory search of the vehicle. During the course of the search, Hupp found individual bags of marijuana enclosed in a larger plastic bag located in the car's center front console. Additional baggies and a digital scale were located in the vehicle's glove compartment. Jackson was cited for the traffic violations.

## II. The Course of Proceedings

{¶ 6} Jackson was indicted on one count of Trafficking in Marijuana. He moved to suppress the evidence. Following a hearing, the motion to suppress was overruled. Thereafter, he pled no contest, and was sentenced to community control sanctions. From his conviction and sentence, Jackson appeals.

---

[1] The portion of Fifth Street where Jackson turned left is a one-way street. Therefore, a left-hand turn is permitted on red when no traffic is oncoming.

### III. The Trial Court Did Not Err in Overruling

### Jackson's Motion to Suppress

{¶ 7} Jackson's sole assignment of error on appeal states:

THE TRIAL COURT ERRED WHEN IT OVERRULED THE

APPELLANT'S MOTION TO SUPPRESS.

{¶ 8} Jackson contends that the trial court should have suppressed the evidence found during the search of the vehicle. He argues that because he stopped the vehicle in a legal parking spot at the time he was pulled over, there was no legitimate reason for impounding the vehicle. He cites *State v. Collura*, 72 Ohio App.3d 364, 594 N.E.2d 975 (8th Dist. 1991), as support for his argument.

{¶ 9} When hearing a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist. 1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist. 1994). Thus, a reviewing court must accept a trial court's factual findings if they are supported by competent, credible evidence. *State v. Dickerson*, 179 Ohio App.3d 754, 757, 2008-Ohio-6544, 903 N.E.2d 697, 699, ¶ 9 (2d Dist). "Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied." *Id.*, quoting *State v. Claytor*, 85 Ohio App.3d 623, 627, 620 N.E.2d 906 (4th Dist. 1993).

{¶ 10} At the outset, we note that the trial court found that the stop of Jackson's

vehicle was valid given the traffic violations observed by Hupp. We agree. Officer Hupp's unrefuted testimony indicates that Jackson committed at least two traffic violations, one of which forced Hupp to apply his cruiser brakes in order to avoid a collision. Therefore, we conclude that the initial stop of the vehicle was reasonable, and did not violate Jackson's Fourth Amendment rights.

{¶ 11} We next turn to Jackson's argument that the state exceeded its authority by impounding his vehicle, and that the inventory search was therefore illegal

{¶ 12} "Warrantless searches and seizures are per se unreasonable under the Fourth Amendment, subject to only a few well recognized exceptions. Once it is established that police officers have conducted a warrantless search, the State bears the burden of demonstrating, by a preponderance of the evidence, that the warrantless search was not unreasonable because it fits within one of the exceptions to the warrant requirement." *State v. Wilcoxson*, 2d Dist. Montgomery No. 15928, 1997 WL 452011, *2 (July 25, 1997) (internal citations omitted).

{¶ 13} In this case, the State first argues, and the trial court found, that the search of Jackson's vehicle was permitted by the "inventory exception" to the warrant requirement of the Fourth Amendment which permits the police to conduct a warrantless search to produce an inventory of the contents of an impounded vehicle. *South Dakota v. Opperman*, 428 U.S. 364, 376, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *State v. Mesa*, 87 Ohio St.3d 105, 108-109, 717 N.E.2d 329 (1999).

{¶ 14} "In order for police to perform a valid inventory search of an automobile, the vehicle must first be lawfully impounded." *State v. Clancy*, 2d Dist. Montgomery No. 18844, 2002 WL 628124, *3 (April 19, 2002). "In determining the lawfulness of the

impoundment, authority to impound should never be assumed. A car may be impounded if it is evidence in a criminal case, used to commit a crime, obtained with funds derived from criminal activities, or unlawfully parked or obstructing traffic; or if the occupant of the vehicle is arrested; or when impoundment is otherwise authorized by statute or municipal ordinance. * * * An impoundment implies some public policy purposes being served; a legitimate purpose should not be assumed." *State v. Taylor*, 114 Ohio App.3d 416, 422, 683 N.E.2d 367 (2d Dist. 1996), citing Katz, *Ohio Arrest, Search and Seizure* (1996), 224-25. "An impoundment is lawful if it is conducted pursuant to standardized police procedures. Standardized procedures for impoundment are required to ensure that a subsequent inventory search is not 'a ruse for general rummaging in order to discover incriminating evidence.' " *Clancy*, *supra* at *3, quoting *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990).

{¶ 15} In this case, Jackson does not argue that the Sinclair Police Department lacked a standardized, routine tow policy. Indeed, he admits that there was testimony regarding the policy. A copy of the policy was introduced in evidence. Although that policy leaves some discretion to the officer on the scene, it establishes a discernible set of criteria upon which to base that discretion, and provides for the towing of vehicles when the operator of the vehicle is arrested.

{¶ 16} Jackson, instead, focuses his argument upon the fact that, when he was stopped by Hupp, he pulled the car into a metered parking space. Thus, he claims that there was no justification for towing the vehicle. In support, he cites *Collura*, *supra*. In *Collura*, the defendant had parked in a police parking lot. *Id.* at 366. Upon entering the police station, he was arrested on an outstanding warrant for domestic violence. *Id.*

Because the police station parking lot did not allow overnight parking, the defendant's vehicle was immediately impounded for towing. *Id.* An inventory search was conducted, which revealed drugs and drug paraphernalia. *Id.* On appeal, it was held that the impoundment was illegal, because the car was legally parked when it was searched, and because the defendant had a friend with him who could have removed the car from the lot prior to the nighttime ban on parking. *Id.* at 370. Thus, the court found that there was no reason justifying the removal of the vehicle from its legal parking place. *Id.* at 371.

{¶ 17} Contrastingly, in the case before us, while Jackson did stop in a legal parking space, the space was metered, and there is no evidence that Jackson could pay the meter fee. Furthermore, the vehicle belonged to Jackson's daughter. There is no evidence that the daughter requested that the car remain in that spot or that she would be available to retrieve the car. Unlike *Collura*, no one was with Jackson, so that the car either had to be towed or left at the scene. Since there was no one to pay the meter, and since the owner of the car was not present, the officer did not act unreasonably by impounding the vehicle. Therefore, we disagree with Jackson's claim that the vehicle was improperly impounded. On this record the inventory search conducted by Hupp was undertaken in good faith and in accordance with his department's standard policy. Thus, the inventory search was valid.

{¶ 18} Furthermore, the State argues that Hupp had, upon smelling marijuana, probable cause to search the vehicle. A warrantless search of an automobile is constitutional if there is probable cause to believe that a vehicle is carrying evidence of a crime. *State v. Hobbs*, 8th Dist. Cuyahoga No. 85889, 2005-Ohio-3856, ¶ 15. "The

smell of marijuana by a person who recognizes its odor is sufficient to establish probable cause to search a motor vehicle pursuant to the automobile exception to the warrant requirement." *State v. Earley*, 2d Dist. Montgomery No. 19161, 2002-Ohio-4112, ¶ 11.

**{¶ 19}** Hupp testified that he is trained in the detection and identification of the smell of marijuana, and that he is a registered and certified evidence technician with the Miami Valley Crime Lab. He testified that he smelled the smell of "raw marijuana" coming from the vehicle. Tr. p. 17. Hupp searched the console and glove compartment, neither of which were locked.

**{¶ 20}** The warrantless search of the vehicle was constitutional because the officer had probable cause to believe that it contained drugs. *Hobbs*, *supra*, ¶ 19; *State v. Arnold*, 2d Dist. Clark No. 2001 CA 55, 2002 WL 538836 (April 12, 2002).

**{¶ 21}** We conclude that the search of the vehicle was constitutional pursuant to both the automobile and inventory-search exceptions. Therefore, the trial court did not err in overruling Jackson's motion to suppress.

**{¶ 22}** Jackson's sole assignment of error is overruled.

## IV. Conclusion

**{¶ 23}** Jackson's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

DONOVAN and WELBAUM, JJ., concur.

Copies mailed to:

Mathias H. Heck
Carley J. Ingram

William O. Cass, Jr.
Hon. Barbara P. Gorman