[Cite as *State v. Billups*, 2017-Ohio-4309.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                 :          APPEAL NO. C-150500
                                      TRIAL NO.  B-1405443

       Plaintiff-Appellee,         :

   vs.                               :          *O P I N I O N.*

MYRON BILLUPS,             :

       Defendant-Appellant.     :

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 16, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Paul Croushore,* for Defendant-Appellant.

**DETERS, Judge.**

{¶1}    Defendant-appellant Myron Billups appeals his conviction for trafficking in heroin.  On appeal, he challenges the trial court's denial of his motion to suppress evidence recovered from his person and his vehicle during a traffic stop.  Billups argues the police officers lacked reasonable suspicion to conduct a *Terry* pat-down, the pat-down exceeded the permissible scope, the officers excessively detained him to await the arrival of a drug-sniffing canine, and the officers lacked probable cause to arrest him.   Finding none of his arguments meritorious, we affirm the trial court's judgment.

### *Trial Court Proceedings*

{¶2}    Billups was charged with two second-degree felonies, trafficking in heroin, a violation of R.C. 2925.03, and possession of heroin, a violation of R.C. 2925.11.  Billups moved to suppress all the evidence obtained from the search of his person and vehicle and requested an evidentiary hearing.   At the hearing, the state stipulated that it had lacked a warrant to arrest Billups, and therefore, it had the burden to prove probable cause to arrest him.  The state presented testimony from Officer Eric Schaible.  Billups presented four exhibits, which the trial court admitted into evidence: the video of the traffic stop, the photographs of the items seized during the stop, and the traffic citation.  At the conclusion of the hearing, the trial court took the matter under advisement.  The trial court subsequently denied the motion to suppress, providing detailed findings of fact and conclusions of law.

{¶3}    Thereafter, Billups entered a no-contest plea, and the trial court found him guilty of both counts of trafficking in heroin and possession of heroin.   At sentencing, the trial court merged, at the state's election, the possession count with

the trafficking count and sentenced Billups to four years in prison for the trafficking offense.

### Analysis

{¶4} In a single assignment of error, Billups argues the trial court erred by denying his motion to suppress.

{¶5} Appellate review of a motion to suppress presents a mixed question of fact and law. *See State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The trial court, acting as the trier of fact, is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Therefore, an appellate court must accept the factual findings if they are supported by competent, credible evidence, but it reviews de novo the trial court's application of the law to the facts. *Id.*; *see also State v. Sweeten,* 1st Dist. Hamilton No. C-150583, 2016-Ohio-5828, ¶ 8.

### Trial Court's Factual Findings

{¶6} The trial court made the following findings of fact, which are supported by competent credible evidence. Officer Schaible and his partner were in uniform and on patrol in a marked police cruiser. They were watching Billups and others at a United Dairy Farmers store. When Billups drove away, the officers followed his vehicle. Billups's vehicle entered a turn lane and quickly changed lanes. The officers initiated a traffic stop for improper change of course and for improperly tinted windows.

{¶7} The officers then approached Billups's vehicle and spoke with him. Billups was moving around in the vehicle and seemed very nervous, which caused Officer Schaible to suspect something illegal might be in the vehicle. Officer Schaible and his partner went back to their cruiser and ordered a drug dog to the scene.

3

Officer Schaible started filling out the citation for the window-tint violation and the improper change of course, as well as a contact card that he is required to complete during all stops. He also ran Billups's record. Billups had been charged with a weapons violation as well as numerous drug-trafficking and possession charges. Officer Schaible testified that it took him ten-15 minutes to complete the citation and the contact card.

{¶8} During this time, he approached Billups's vehicle a second time and tested the window tint. Although Billups had already told the officers that his windows were in violation, Officer Schaible chose to test them to ensure that the tint reading on the traffic citation was accurate.

{¶9} Officer Schaible then went back to the police cruiser, and he was in the police cruiser for a while working on the traffic citation. After hearing dogs barking, Officer Schaible and his partner approached Billups's car for the third time. At that point, Officer Schaible saw a bulge in Billups's left front pants pocket, which he believed to be a weapon, and he asked Billups to exit from the vehicle.

{¶10} Officer Schaible then conducted a *Terry* pat-down for the officers' safety. He found money in Billups's front pants pocket, and drugs in the seat of his pants. Officer Schaible testified he immediately knew what the items were. He then placed Billups under arrest and walked him back to the police cruiser. At that point, the drug dog approached Billups's vehicle and hit on the driver's side of the vehicle. The police searched Billups's vehicle and recovered a box of plastic baggies, rubber bands, and "pay and owe" forms, which Officer Schaible testified was consistent with drug trafficking.

### Terry Pat-Down Search

**{¶11}** Billups first argues that Officer Schaible lacked reasonable suspicion to conduct a pat-down search of his person for weapons. In *Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that if circumstances exist that would cause a reasonable officer to believe that his safety was in danger, the officer is entitled to conduct a pat-down search of the individual's outer clothing to determine whether the defendant is carrying a weapon.

**{¶12}** Here, Officer Schaible acted reasonably in conducting a pat-down search of Billups for weapons. Officer Schaible testified that Billups had made furtive movements, was acting nervously, and had a bulge in his pants pocket, which he believed to be a weapon. He had also run Billups's record and had seen that he had a history of drug and gun offenses. All of these circumstances would have given Officer Schaible reasonable suspicion to conduct a *Terry* pat-down search. *See State v. Evans*, 67 Ohio St.3d 405, 408, 618 N.E.2d 162 (1993) ("[t]he right to frisk is virtually automatic when individuals are suspected of committing a crime, like drug trafficking, for which they are likely to be armed.").

### Discovery of Contraband

**{¶13}** Billups next argues that Officer Schaible exceeded the scope of the search authorized by *Terry* during the pat-down . A *Terry* search is limited in scope to a pat-down search of an individual's outer clothing for weapons because the purpose of the search is to protect the officer. Thus, a *Terry* pat-down search cannot be employed by the officer to search for evidence of a crime. *State v. Milhouse,* 133 Ohio App.3d 527, 530, 728 N.E.2d 1123 (1st Dist.1999); *see State v. Andrews*, 57 Ohio St.3d 86, 89, 565 N.E.2d 1271 (1991).

{¶14} If, during the course of a *Terry* pat-down search of a subject's clothing for weapons, "a police officer feels an object whose contour or mass makes its incriminating character as contraband immediately apparent, and the officer has a lawful right of access to the object, the officer is entitled to seize the object" under the plain-feel doctrine. *Milhouse* at 531, citing *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). The officer, however, is not permitted to squeeze or manipulate the object to determine its identity. *Id.*

{¶15} In *Milhouse*, this court held that a police officer's search of a suspect which had revealed crack cocaine had exceeded the permissible bounds of a *Terry* search where the officer had to squeeze and break the object in the suspect's crotch area to determine that it was crack cocaine. *Id.* Likewise, in *State v. Robinson*, 1st Dist. Hamilton No. C-000135, 2000 WL 1643570, *1-2 (Nov. 3, 2000), this court concluded that a police officer's manipulation of small objects in the suspect's pants pockets, which were later determined to be crack cocaine, had exceeded the scope of a search authorized by *Terry* and *Dickerson* and had violated the Fourth Amendment.

{¶16} Here, however, the evidence presented at the suppression hearing demonstrated that Officer Schaible did not exceed the bounds of a permissible *Terry* search during his pat-down of Billups and that the seizure of contraband was warranted under *Dickerson*. Officer Schaible testified that while patting down the outside of Billups's clothing, he felt a large lump as soon as he touched the seat of Billups's pants. Based on the location and size of the bulge, and his experience and knowledge that people often conceal drugs in the seat of their pants, Officer Schaible testified that it was immediately apparent to him that the bulge contained illegal drugs.

6

{**¶17**} Billups's assertion that Officer Schaible needed more information besides his experience and "plain feel" of the bulge to conclude that it was contraband is not supported by the case law. In *United States v. Walker*, 181 F.3d 774, 778 (6th Cir.1999), for instance, the Sixth Circuit upheld the warrantless seizure of a bag of crack cocaine in the defendant's crotch area on the basis of the officer's plain-feel discovery of the drugs during a *Terry* pat-down search. Likewise, in *State v. Hinton*, 2d Dist. Montgomery No. 25634, 2013-Ohio-3381, ¶ 12 and 38-40, the Second Appellate District held that a police officer's belief, which was based on his experience and his plain feel, that the jagged rocks in defendant's pants pocket were contraband, entitled him to search and seize crack cocaine from the defendant's pants pockets.

### Duration of the Traffic Stop

{**¶18**} Billups next argues that the police unnecessarily detained him for 13-14 minutes while waiting for a drug dog in violation of *Rodriguez v. United States*, ____U.S. ____, 135 S.Ct. 1609, 1615, ____L.Ed.2d ____ (2015).

{**¶19**} In *Rodriguez*, the Supreme Court held "that a police stop exceeding the time needed to handle the matter for which the stop was made violates" a defendant's Fourth Amendment rights. *Id.* at 1612. The Supreme Court held that the tolerable duration of a traffic stop is determined by the seizure's mission, which is to address the traffic violation that warranted the stop and to attend to related safety concerns. *Id.* Thus, "authority for the seizure ends when the tasks tied to the traffic infraction," which include checking the driver's license, determining if there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance, "are—or reasonably should have been completed." *Id.* at 1614, 1616-1617.

7

{¶20} Absent "reasonable suspicion of criminal activity," a police officer cannot detain a motorist "beyond completion of the traffic infraction investigation" for a canine sniff of his vehicle. *Id.* at 1616-1617. The Supreme Court emphasized that the "critical question [i]s not whether the [canine] sniff occur[red] before or after the officer issues a ticket, but whether conducting the sniff adds time to the stop." *Id.* at 1616.

{¶21} Here, Officer Schaible's testimony at the suppression hearing demonstrated that the stop of Billups's vehicle was completed within a reasonable time and did not extend beyond what was necessary to complete the purpose of the traffic stop. In the 13-14 minutes prior to the *Terry* pat-down of Billups, Officer Schaible conducted a reasonable and prompt investigation. He approached Billups's vehicle, obtained some information from Billups, and then returned to his cruiser. Officer Schaible then called for a drug-sniffing dog, ran Billups's criminal record, and began working on the traffic citation and contact card. Officer Schaible subsequently exited from his cruiser with the tintometer and approached Billups's vehicle a second time to test the window tint.

{¶22} On his third approach, Officer Schaible testified that he had seen a bulge in Billups's pants. When he asked Billups to exit from the car, the drug dog had just arrived. Prior to that time, Officer Schaible had been investigating the traffic offenses and completing the paperwork necessary for the traffic stop. Thus, there is no evidence that Officer Schiable or his partner unreasonably extended the traffic stop beyond what was necessary to issue the traffic citation to conduct a canine sniff of Billups's vehicle. *See State v. Reece,* 1st Dist. Hamilton No. C-140635, 2016-Ohio-5017, ¶ 25; *State v. Stevens*, 4th Dist. Washington No. 15CA30, 2016-Ohio-5017, ¶ 27; *see also State v. Blatchford*, 2016-Ohio-8456, ___N.E.3d ___, ¶ 26-32 (12th Dist.).

By the time the police had conducted the canine sniff of Billups's vehicle, the officers had already discovered the drugs on Billups's person through the *Terry* pat-down.

### *Probable Cause to Arrest*

{¶23} Finally, Billups argues that the police lacked probable cause to arrest him. "A police officer has reasonable or probable cause to arrest when the events leading up to the arrest, 'viewed from the standpoint of an objectively reasonable police officer amount to' probable cause." *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, 3 N.E.3d 135, ¶ 26, quoting *Ornelas v. United States*, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996). "Probable cause exists when there are facts and circumstances within the police officer's knowledge that are sufficient to warrant a reasonable belief that the suspect is committing or has committed an offense." *Id.*, citing *Beck v. Ohio*, 379 U.S. 89, 162, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). An arrest made without probable cause is constitutionally invalid. *Steele,* citing *State v. Timson*, 38 Ohio St.2d 122, 127, 311 N.E.2d 16 (1974).

{¶24} When Officer Schaible found contraband on Billups's person during the *Terry* pat-down, he had probable cause to arrest Billups for possession of illegal drugs. *See State v. Williams*, 11th Dist. Trumbull No. 2003-T-0071, 2004-Ohio-6337, ¶ 18 (holding that officers had probable cause to arrest the defendant where it was readily apparent to the officers that the bulge in the defendant's pants was contraband); *see also State v. Farrey*, 9th Dist. Summit No. 26703, 2013-Ohio-4263, ¶ 17 (holding that an officer's discovery of money and marijuana in the defendant's pants pocket during a *Terry* pat-down search provided probable cause to arrest the defendant for drug possession).

**{¶25}** We conclude the trial court properly overruled Billups's motion to suppress. We, therefore, overrule Billups's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**MOCK, P.J.,** and **MILLER, J.,** concur.

Please note:

    The court has recorded its own entry this date.