*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0330P (6th Cir.)
File Name: 02a0330p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

　　　*v.*　　　　　　　　　　　　　No. 00-6555

GERARD CHAPMAN,
　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 99-00023—John G. Heyburn II, Chief District Judge.

Argued: August 2, 2002

Decided and Filed: September 26, 2002

Before: NELSON, BOGGS, and NORRIS, Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** David M. Dudley, LAW OFFICES OF DAVID DUDLEY, Los Angeles, California, for Appellant. Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** David M. Dudley, LAW OFFICES OF DAVID DUDLEY, Los Angeles, California, Philip K. Cohen, LAW OFFICES OF PHILIP COHEN, Los Angeles, California, for Appellant. Terry M.

Cushing, James A. Earhart, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

———————————

**OPINION**

———————————

BOGGS, Circuit Judge.   Gerard Chapman appeals his conviction and sentence for possession of cocaine base with the intent to distribute.  Chapman argues that the district court erred by failing to suppress evidence seized in violation of his Fourth Amendment rights.  Chapman additionally argues that his sentence of 168 months, while well below the statutory maximum sentence for his offense, is invalid under the Supreme Court's decision in *Apprendi v. New Jersey,* 530 U.S. 466 (2000).   For the following reasons, we affirm Chapman's conviction and sentence.

**I**

On January 12, 1999, the Metro Narcotics Unit of the Louisville Police Department intercepted a package in the mail filled with nearly one kilogram of cocaine.  The officers traced the mailing address on the package to an abandoned home and discovered that Lonnell Shelmon, a convicted drug trafficker, used the home to receive occasional packages.  The police followed Shelmon from his meeting with his parole officer to the Executive Studio and More Motel.  Shelmon went inside the motel briefly.  When he reemerged, he was approached by the officers and immediately fled.  He was apprehended, and officers found a bag full of cocaine in his pocket.  Shelmon told officers that he had bought the cocaine from individuals in Room 219 of the motel.

After Shelmon was arrested, officers observed two men walking from the hotel.  When the men noticed the police interrogating Shelmon, they immediately walked in separate directions. Detective Napier approached one of the men, who was holding an opaque trash bag.  As Napier approached the man, he informed him that he was a narcotics detective and

doing so, this court seemingly ignored *McMillan*, relying only on some dicta in *Apprendi* and overlooking other explicit claims in that decision that *Apprendi* did not reach the mandatory minimum issue. *See Flowal*, 234 F.3d at 936-37 (not mentioning *McMillan*); *Ramirez*, 242 F.3d at 352 (Siler, concurring) (noting the majority's sparse treatment of *McMillan* and relying only on the fact that *Flowal* had been decided first by another panel and was binding).

*Harris* makes it clear, however, that *Ramirez*, *Flowal*, and their progeny have been overturned. The rule of *Harris* and *Apprendi* is that any fact that increases the statutory maximum sentence must be submitted to the jury and proved beyond a reasonable doubt, but that a fact that merely activates or increases a statutorily mandated minimum sentence may, at the legislature's discretion, be submitted to a judge and proved only by a preponderance of the evidence.

Chapman's *Apprendi* argument was inapposite because he established the relevant fact by his guilty plea. Even were that not the case, our jurisprudence under *Ramirez* and its progeny provided him no relief, as his sentence was comfortably above the statutory minimum and below the statutory maximum. We know today, after *Harris*, that our *Ramirez* jurisprudence is no longer good law and that the mere fact that Chapman's sentence is less than the catchall statutory maximum makes his sentence valid under *Apprendi*.

Chapman also contends that the Due Process Clause requires that the government establish beyond a reasonable doubt every relevant fact that affects sentence under the United States Sentencing Guidelines. We have repeatedly and conclusively rejected this argument. *See, e.g., United States v. Corrado*, 227 F.3d 528, 542 (6th Cir. 2000).

### III

For all of the foregoing reasons, we AFFIRM Chapman's conviction and sentence.

that he was conducting an investigation. Napier asked the man if he could speak to him. The man immediately complained, saying "can't a man just take out his garbage," and dropped the trash bag. When the bag hit the ground, it opened, and Napier observed a mixing bowl with cocaine residue, a baking soda box, several small plastic bags, and a mixer. The man proved to be the defendant, Gerard Chapman,[1] and he was immediately arrested.

Chapman was indicted for conspiracy to distribute cocaine base and possession of cocaine base with the intent to distribute. Chapman moved to suppress the evidence found in the trash bag, claiming that the officer lacked the reasonable suspicion necessary for a *Terry* stop, which, he contends, provided the occasion for the officer seeing the drug paraphernalia. The district court, adopting a magistrate judge's Report and Recommendation, denied Chapman's motion to suppress. Chapman then entered a conditional plea of guilty to both counts of the indictment, reserving the right to appeal the denial of his motion to suppress.

The probation officer prepared a Presentence Report. The PSR used the drug quantity, 1,336 grams, that was charged in the indictment, to which Chapman pled guilty. The base offense level for a conviction under 21 U.S.C. § 841(a)(1) and a drug quantity of 1,336 grams is 36. USSG §2D1.1. After adjustments for the acceptance of responsibility and other matters, the district court determined a final offense level of 33 and a criminal history category of III, creating a sentencing range of 168 to 210 months. The district court sentenced Chapman to 168 months of imprisonment, the low end of the range, followed by five years of supervised release.

Chapman now appeals his conviction and sentence.

---

[1] Chapman was also known as Rizwan Nasr and is referred to as such in the suppression hearing transcript.

## II

Chapman argues that Detective Napier lacked the reasonable suspicion necessary to detain him for questioning. The stop led to Chapman dropping the bag he was carrying, revealing drug paraphernalia and providing probable cause for his arrest. According to Chapman, the stop was invalid, which rendered all of the evidence seized from his bag inadmissible. In addition, Chapman contends that the district court erred in holding him responsible for 1,336 grams of cocaine base in sentencing because the drug amount had not been proven beyond a reasonable doubt as required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000). We find both of Chapman's assignments of error without merit and explain our conclusion below.

**A. The Illegal Seizure Argument**

Chapman argues that the police lacked reasonable suspicion to seize him for questioning and that only the invalid seizure occasioned the discovery of the drug paraphernalia in his trash bag. The Supreme Court in *Terry v. Ohio*, 392 U.S. 1 (1968), held that a police officer may briefly detain an individual, question him, and perform a limited frisk for weapons if the officer reasonably suspects the individual of criminal activity.

The district court, by adopting the magistrate judge's report and recommendation, determined that the police reasonably suspected Chapman of criminal activity. It could be questioned whether Chapman was sufficiently seized even to constitute a *Terry* stop. Chapman was never frisked before he dropped the bag. Napier simply identified himself as a police officer and requested to ask Chapman a few questions about a narcotics investigation. Napier never ordered Chapman not to move.

In *Florida v. Royer*, 460 U.S. 491 (1983), a plurality of the Supreme Court noted:

Law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the

Section 841(b)(1)(A) mandatory minimum and the Section 841(b)(1)(C) catchall maximum, the Supreme Court's holding in *Apprendi* and our holding in *Ramirez* do not require the drug quantity triggering the Section 841(b)(1)(A) minimum to be found by a jury beyond a reasonable doubt. *Stafford* 258 F.3d at 479 n.9; *Garcia,* 252 F.3d at 842.

Although Chapman was subject to the mandatory minimum because he was found to have distributed over 50 grams of cocaine base, he was sentenced to 168 months, between the minimum (120 months) and the maximum (240 months). Therefore, our gloss on *Apprendi* in *Ramirez* would not apply to Chapman's sentence even if he had not conclusively established the drug quantity by his guilty plea.

Today, the inapplicability of *Apprendi* is even clearer. In *Harris v. United States*, 122 S. Ct. 2406 (June 24, 2002), the Supreme Court held that facts that trigger a statutorily mandated minimum sentence may be found both by a judge and by only a preponderance of the evidence. In doing so, the Court reaffirmed its decision in *McMillan v. Pennsylvania*, 477 U.S. 79 (1986), which held that facts triggering mandatory minima need not be submitted to a jury or proved beyond a reasonable doubt. *Harris*, 122 S. Ct. at 2414 (Kennedy with Rehnquist, O'Connor, and Scalia, concurring) (holding that *Apprendi* and *McMillan* are reconcilable and that the Constitution requires only facts that increase the statutory maximum sentence to be submitted to the jury and proved beyond a reasonable doubt); 122 S. Ct. at 2420 (Breyer, concurring) (while arguing that *Apprendi* was wrongly decided, reaffirming *McMillan* and noting that it was at least now clear that facts triggering mandatory minima need not be submitted to the jury or proved beyond a reasonable doubt).

This court, in *Ramirez* and *United States v. Flowal*, 234 F.3d 932 (6th Cir. 2000), held that the reasoning of *Apprendi* demands that facts that narrow the sentencing range by establishing a mandatory minimum sentence must be submitted to a jury and proved beyond a reasonable doubt. In

*Stafford*, 258 F.3d 465, 477-78 (recognizing that a plea of guilty to an indictment that alleged drug quantity sufficiently establishes quantity for *Apprendi* purposes).

Even absent the guilty plea, *Apprendi* would not apply to the effect that the quantity determination had on Chapman's sentence. Under our jurisprudence of three months ago, *Apprendi*'s inapplicability would have been clear. Chapman pled guilty to violating 21 U.S.C. § 841(a)(1), which proscribes possession of a cocaine base with intent to distribute, and to violating 21 U.S.C. § 846, which proscribes conspiracy to possess cocaine base with an intent to distribute. The maximum sentence for the possession with intent to distribute cocaine base in any amount up to 5 grams is 20 years. *See* 21 U.S.C. § 841(b)(1)(C). *See also* 21 U.S.C. § 846 (tying the penalties for the conspiracy charge to the object offense). Chapman was sentenced to less than twenty years. The quantity determination did subject Chapman to a mandatory minimum sentence of ten years. 21 U.S.C. § 841(b)(1)(A)(iii).

This court had determined that *Apprendi* requires that juries determine, beyond a reasonable doubt, those facts that trigger minimum sentences made mandatory by statute. *United States v. Ramirez*, 242 F.3d 348 (6th Cir. 2001). However, we had explicitly limited our holding in *Ramirez* by determining that *Apprendi* only applies when the fact at issue triggers the mandatory minimum *and* the defendant is sentenced at "the bottom of the statutory range," that is, *at the mandatory minimum*. *Stafford*, 258 F.3d at 479 n.9; *United States v. Garcia*, 252 F.3d 838, 842 (6th Cir. 2001). We explained that such circumstances imply that the district court sentenced the defendant *because of the mandatory minimum*, instead of through the exercise of the court's sentencing discretion below the statutory maximum. *Garcia*, 252 F.3d at 843 (limiting *Apprendi* to sentences at the mandatory minimum because the sentence indicates the district court's belief that it was "constrained by a specific statute to impose the sentence it did."). Applying these principles, we made clear that when the defendant is sentenced between the

street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way.

*Id.* at 497-98 (citations omitted).

Although this passage in *Royer* was supported by only a plurality of the Court and was in the context of finding that a particular encounter that went beyond these circumstances was a *Terry* stop, this court has consistently stated that such activity falls well short of a seizure requiring any justification by the police. *United States v. Taylor*, 956 F.2d 572, 575 (6th Cir. 1992) (*en banc*) ("Relevant precedent has made clear that a seizure within the meaning and purpose of the fourth amendment does not occur when governmental agents approach a pedestrian, identify themselves as law enforcement officers, and solicit conversation or request an interview."); *United States v. Reed*, 194 F.3d 692, 698 (6th Cir. 1999). We have added that "so long as a 'reasonable person would have felt free to leave the situation, no seizure has occurred within the meaning of the Fourth Amendment.'" *United States v. Richardson*, 949 F.2d 851, 855 (6th Cir. 1991).

Napier did not directly prevent Chapman from leaving, and Chapman never asked to leave, only saying "can't a man just take out his garbage" as he dropped the bag. Napier had only identified himself as a police officer and requested to ask Chapman a few questions by the time Chapman had dropped the bag, revealing the evidence sufficient to establish probable cause for the arrest. Chapman does not contend that Napier did anything more than this. He also does not contend that

Napier's actions were inappropriate after he saw the paraphernalia in Chapman's bag. Napier's actions, until the bag opened and revealed probable cause for an arrest, would not necessarily constitute enough of a seizure that the protections of *Terry* would even apply.

However, we need not resolve whether the encounter was a *Terry* stop to dispose of Chapman's argument. To the extent that Napier's questioning of Chapman constituted a *Terry* seizure and required reasonable suspicion, the circumstances surrounding the questioning more than supply it. By the time that Napier had approached Chapman, Napier was aware that a drug distribution operation was occurring in the hotel that Chapman had just left. Napier's fellow officer, Sherman Dotson, testified that he had been troubled by Chapman's suspicious reaction to Shelmon's arrest, quickly parting company with his companion and moving away from the police officers, and he had asked Napier to follow Chapman.[2] Immediately before Chapman left the hotel, Sergeant Hatchett had yelled over the radio that a black man had been involved in a fight inside the hotel and was exiting. Chapman was black.

Given the officers' information that a significant drug operation had been running in the very immediate past inside the hotel, the report that a black man involved in a fight was fleeing the hotel, and Chapman's suspicious behavior outside of the hotel, Napier and Dotson had observed articulable facts providing reasonable suspicion for a *Terry* stop. We have previously relied on a police officer's knowledge regarding

---

[2]Chapman places great weight on Napier's statement at the suppression hearing that the only fact that he was aware of when he stopped Chapman was that he came out of the hotel. Transcript of Suppression Hearing at 57. However, *Terry* never required that the particular officer who performed the *Terry* stop have sufficient facts for reasonable suspicion. The hearing revealed that Detective Dotson told Napier to stop Chapman while he went after the other man. Because Napier was acting as Dotson's agent, we may rely on Dotson's testimony to determine whether the police had reasonable suspicion sufficient to justify Napier's stop.

recent criminal conduct in the area to find reasonable suspicion. *United States v. Anderson*, 923 F.2d 450, 456 (6th Cir. 1991) (noting that large number of recent robberies in neighborhood contributed to reasonable suspicion sufficient to stop overloaded automobile); *United States v. Harris*, 192 F.3d 580, 584 (6th Cir. 1999) (holding officer's observation of individual walking erratically in an area known for frequent drug sales sufficient for reasonable suspicion). Napier's knowledge of drug activity occurring in the building from which Chapman exited, immediately prior to his leaving, provides an even stronger case for reasonable suspicion. Chapman's Fourth Amendment argument is without merit.

## B. The *Apprendi* Argument

Chapman contends that the district court erred in determining that he was responsible for 1,336 grams of cocaine base, without requiring that the government prove the amount beyond a reasonable doubt. According to Chapman, the district court is required, after *Apprendi*, to apply this high standard of proof to any facts that "enhance" a defendant's sentence.

In this circuit, *Apprendi* has been held to apply when the district court determined a fact that caused the defendant's sentence to exceed a statutory maximum or, under some limited circumstances, that required a statutorily mandated minimum sentence, without a jury determining the fact beyond a reasonable doubt. *Apprendi* has never been held to apply to every fact that increases the defendant's sentence within the rubric of the guidelines.

In this case, Chapman pled guilty, without reservation, to the offenses and facts charged in the indictment. The indictment specifically charged Chapman with the conspiracy to distribute and possession with intent to distribute "1,336 grams of cocaine base." Chapman's guilty plea to the "charges contained in Counts 1 and 2" of the indictment established the facts alleged in those counts beyond a reasonable doubt. Even if *Apprendi* were to apply, it would be satisfied by Chapman's guilty plea. *See United States v.*