NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0580n.06

No. 18-1202

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 26, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| FRANK HARPER | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| UNITED STATES OF AMERICA | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |

**BEFORE:** ROGERS, WHITE, and READLER, Circuit Judges.

**ROGERS, Circuit Judge.** Can a federal criminal defendant take advantage of a defendant-friendly Supreme Court statutory holding that, after his direct appeal, overturns a long-standing circuit court precedent? In most instances the answer turns—as in this case—on whether defendant's counsel raised the issue on direct appeal, or at least was constitutionally required to do so. Petitioner Harper and his two co-defendants were sentenced to substantial sentences for carjacking, as well as substantial consecutive sentences for use of a firearm during a crime of violence. Harper's co-defendants were able to take advantage of the Supreme Court's recent ruling in *Dean v. United States*, 137 S. Ct. 1170 (2017), that district courts may take the length of statutorily mandated consecutive firearm-use sentences into account in determining the sentences for the underlying predicate offenses, contrary to our circuit's prior holdings. Co-defendants' counsel raised the issue in our court on direct appeal and subsequently obtained a remand from the

Supreme Court based upon the intervening *Dean* ruling. Harper's appellate counsel, while raising other issues on appeal and on petition for certiorari, did not raise the *Dean* issue.

In Harper's later § 2255 motion alleging ineffective assistance of appellate counsel, the district court properly denied relief. The Supreme Court had not even granted certiorari in *Dean* at the time Harper had lost his direct appeal. Appellate counsel was not ineffective for failing to predict *Dean*'s change to Sixth Circuit law before then, and defendants are not constitutionally entitled to the assistance of counsel at the subsequent certiorari stage of a federal criminal prosecution. Harper's remaining arguments for relief are also without merit. The Supreme Court's new rule in *Dean* does not apply retroactively to cases on collateral review, and Harper's argument that his carjacking convictions were not crimes of violence under 18 U.S.C. § 924(c) is squarely foreclosed by our published precedent. *See United States v. Jackson*, 918 F.3d 467, 486 (6th Cir. 2019).

## I. Harper's Convictions and Sentence

A jury convicted Frank Harper, Philip Harper, and Bernard Edmond of violating several criminal laws relating to their scheme to steal cars and then sell them. Frank Harper was convicted of one count of conspiracy under 18 U.S.C. § 371, three counts of carjacking under 18 U.S.C. § 2119, and three counts of using a firearm in relation to a crime of violence under 18 U.S.C. § 924(c). Section 924(c)(3) defines the term "crime of violence" as a felony that "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." The district court sentenced Harper to 60 months on the conspiracy count, to be served concurrently with 97 months for the three carjacking counts. The district court also imposed statutorily required consecutive

sentences for Harper's firearm-use convictions under § 924(c) amounting to 55 years. *See* 18 U.S.C. § 924(c). Accordingly, Harper was sentenced to 757 months in total.

Harper and his co-defendants appealed. *See United States v. Edmond*, 815 F.3d 1032 (6th Cir. 2016). Frank Harper challenged his convictions and his two co-defendants challenged both their convictions and sentences. This court affirmed all convictions and sentences on March 3, 2016. *Edmond*, 815 F.3d at 1032, *cert. granted, judgment vacated*, 137 S. Ct. 1577 (2017), and *cert. granted, judgment vacated sub nom. Harper v. United States*, 137 S. Ct. 1577 (2017). Subsequently, Harper's appellate counsel filed a petition for certiorari on August 2, 2016, as did his co-defendants. Harper's petition—unlike his co-defendants' petitions—did not challenge whether the district court was required or permitted to consider the mandatory minimum sentence under § 924(c) when sentencing Harper for his conspiracy and carjacking convictions.

On October 28, 2016, the Supreme Court granted certiorari in *Dean*, 137 S. Ct. 368 (2016), which presented the question of what is the sentencing court's discretion to consider a mandatory minimum sentence under § 924(c) when imposing a sentence on the underlying predicate crime. Harper's petition for certiorari did not raise this issue, and his counsel did not amend his petition to add this issue after the Supreme Court granted certiorari in *Dean*. The Supreme Court denied Harper's petition on January 11, 2017. The Supreme Court decided *Dean* on April 3, 2017, holding that sentencing courts may consider the mandatory minimum sentence imposed under § 924(c) when calculating a just sentence for the predicate offense. 137 S. Ct. at 1176–77. Several weeks later, the Supreme Court granted Harper's co-defendants' petitions, vacated this court's judgment, and remanded their cases for further consideration in light of *Dean*. *Harper v. United States*, 137 S. Ct. 1577 (2017); *United States v. Edmond*, 137 S. Ct. 1577 (2017). This court then affirmed those defendants' convictions and remanded to the district court "for the limited purpose of

resentencing in light of *Dean*." The district court significantly reduced those defendants' sentences for their predicate offenses.

Harper filed a § 2255 motion to vacate, set aside, or correct his sentence, asserting five grounds for relief. The district court denied Harper's motion and denied Harper's request for a certificate of appealability. However, this court granted a certificate of appealability on Harper's claims that: "(1) pursuant to *Johnson*, carjacking is not a crime of violence and therefore cannot serve as a predicate felony for Harper's § 924(c) convictions; and (2) appellate counsel was ineffective for failing to challenge on appeal the district court's failure to consider the § 924(c) mandatory minimum sentences when determining the sentences for the predicate convictions and that, alternatively, he is entitled to resentencing because *Dean* is retroactively applicable to cases on collateral review."

The district court rejected the first of these two claims, that Harper's § 924(c) convictions should be vacated under *Johnson v. United States*. 135 S. Ct. 2551 (2015). In *Johnson*, the Supreme Court held that the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague. *Johnson*, 135 S. Ct. at 2563. At the time of the district court's decision, this court had determined that the residual clause in § 924(c)(3)(B) was sufficiently different from the residual clause at issue in *Johnson* that it was not unconstitutionally vague. *See United States v. Taylor*, 814 F.3d 340, 376–79 (6th Cir. 2016), *abrogated by United States v. Davis*, 139 S. Ct. 2319 (2019). This led the district court to hold that *Johnson* did not provide a ground for relief.

Further, the district court rejected Harper's *Dean*-related claims. The district court determined that Harper failed to establish that his appellate counsel provided ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, to establish

ineffective assistance of counsel, a defendant must show that: (1) counsel's performance was deficient such that the "representation fell below an objective standard of reasonableness," and (2) the deficient performance resulted in prejudice to the defense. *Id.* at 687–88. The district court did not find appellate counsel's failure to raise the issue of whether the district court was permitted to consider a mandatory minimum sentence under § 924(c) when calculating a sentence for the predicate offense to be objectively unreasonable. The Supreme Court did not even grant certiorari in *Dean* until over six months after this court had affirmed Harper's convictions as well as his co-defendants' convictions and sentences. This led the district court to conclude that Harper's appellate counsel was not ineffective based on a failure to predict the subsequent development of the law in *Dean*. The district court also held that appellate counsel's failure to raise the issue in Harper's petition for certiorari and failure to attempt to amend his petition after the Supreme Court granted certiorari in *Dean* did not constitute ineffective assistance, reasoning that there is "no constitutional right to counsel at the petition-for-certiorari stage." In addition, the district court concluded that Harper could not demonstrate prejudice. The district court, which was also the sentencing court in this matter, asserted it took "the 55 years of mandatory minimums for the firearm offenses into account in declining to run the sentences on the carjacking and conspiracy charges consecutive to one another. If Harper was to be re-sentenced, the court would be free to impose the same sentence under the dictates of *Dean*." Finally, the district court ruled that *Dean* does not apply retroactively on collateral review.

## II. Carjacking Qualifies as a Crime of Violence Under 18 U.S.C. § 924(c)

Harper's carjacking qualifies as a crime of violence under the elements clause of 18 U.S.C. § 924(c). Section 924(c)'s definition of a "crime of violence" contains an elements clause and residual clause. Although the Supreme Court has determined that § 924(c)'s residual clause is

unconstitutionally vague, *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), this court has held that carjacking constitutes a crime of violence under § 924(c)'s elements clause, *United States v. Jackson*, 918 F.3d 467 (6th Cir. 2019).

Harper argues that carjacking is not a crime of violence because it can be committed by "intimidation." He asserts that carjacking by "intimidation" can be accomplished "by making a statement that only could theoretically, not actually, put someone in fear of bodily harm, and therefore does not satisfy" § 924(c)'s elements clause. But in *Jackson*, we rejected a similar argument and concluded that the commission of carjacking by "'intimidation' necessarily involves the threatened use of violent physical force." *Jackson*, 918 F.3d at 486. This published holding forecloses Harper's claim that his carjacking convictions were not crimes of violence under § 924(c).

### III. Harper Did Not Receive Constitutionally Ineffective Assistance of Counsel

Harper's contentions that he should be resentenced because he received ineffective assistance of appellate counsel fail. Harper cannot establish that he received ineffective assistance of counsel at the time of his direct appeal because an argument premised on the principle espoused by *Dean* was squarely foreclosed by this court's precedent. When the Supreme Court granted certiorari in *Dean*, Harper had already petitioned for certiorari. He no longer had a constitutional right to counsel at the petition-for-certiorari stage, and there was no derivative right to the effective assistance of counsel at this point.

A. Direct Appeal

In Harper's direct appeal, his appellate counsel did not raise the argument that the district court should have considered the mandatory consecutive sentence imposed under the § 924(c) convictions when determining the sentences for the predicate offenses. On the other hand,

Harper's two co-defendants both raised this argument in their direct appeals to this court. Further, Harper's counsel did not raise this issue in his petition for certiorari and did not amend his petition when the Supreme Court granted certiorari in *Dean*, a case raising the specific question of whether the sentencing court must ignore the mandatory minimum sentence imposed under § 924(c) when calculating the sentence for the predicate offense. Again, his two co-defendants raised this issue in their petitions for certiorari. Ultimately, Harper's petition was denied while the Supreme Court vacated and remanded this court's judgment regarding his two co-defendants in light of *Dean*. Subsequently, Harper's two co-defendants received significantly reduced sentences. While the disparity between Harper's and his co-defendants' situations may appear unfair, he nevertheless cannot meet *Strickland*'s high burden to prove ineffective assistance of counsel.

Although Harper's counsel did not raise a *Dean*-type claim in his direct appeal, this did not fall below the "wide range of professionally competent assistance" required under the Sixth Amendment. *Strickland*, 466 U.S. at 668. To establish ineffective assistance of counsel, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. *Dean* was not even decided until over a year after this court issued its opinion in Harper's direct appeal. Harper's counsel challenged his conviction on several grounds. His counsel challenged the admission of certain evidence and alleged that the Government engaged in prosecutorial misconduct. *Edmond*, 815 F.3d at 1045–47. *Strickland*'s performance standard does not require an attorney to raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). Indeed, the Supreme Court has noted that "'[w]innowing out weaker arguments on appeal and focusing on' those more likely to prevail . . . is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751–52).

-7-

In cases where an appellate attorney has presented one argument on appeal rather than another, the "petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (quoting *Smith v. Robbins*, 528 U.S. 259, 289 (2000)). Harper cannot make such a showing here. His appeal brief was filed fifteen months before the Supreme Court granted certiorari in *Dean*, and this court's opinion in his appeal was issued over six months before the Supreme Court even granted certiorari in *Dean*. This court's precedent foreclosed any *Dean*-type argument at the time. In *United States v. Franklin*, 499 F.3d 578, 586 (6th Cir. 2007), we held that the "sentencing court must determine an appropriate sentence for the underlying crimes without consideration of the § 924(c) sentence." An argument foreclosed by binding precedent can hardly be said to be clearly stronger than issues that counsel did present.

Harper's appellate counsel cannot be faulted for failing to predict the future development of the law in *Dean*. *See Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 288–89 (6th Cir. 2010). One factor in considering the constitutional adequacy of appellate counsel's performance is whether there was any "arguably contrary authority on the omitted issues." *Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir. 1999) (citations omitted). Again, there was not just "arguably contrary authority" to the omitted *Dean*-type claim here, there was binding authority foreclosing this argument at the time of Harper's direct appeal. *See Franklin*, 499 F.3d at 586. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Thus, despite the fact that *Dean* ultimately overturned *Franklin*'s precedent and determined that sentencing courts may take into consideration the mandatory minimum sentence required by § 924(c) when

calculating a just sentence for the underlying offense, Harper's appellate counsel's representation did not fall below the objective standard of reasonableness by failing to predict this legal development.

B.  Petition for Certiorari

Harper cannot demonstrate that he received constitutionally deficient counsel with respect to his petition for certiorari because he did not have a constitutional right to counsel at that stage. *Dean* was not granted certiorari until after Harper had already filed his petition for certiorari. Thus, Harper was clearly in the discretionary appeal stage at the time one could glean any foreshadowing from the grant of certiorari in *Dean*. "Because defendants are not constitutionally entitled to the assistance of counsel in preparing petitions for certiorari," which means that even the failure to file a petition for certiorari cannot amount to constitutionally ineffective assistance of counsel, counsel's performance at this stage cannot be constitutionally ineffective. *Nichols v. United States*, 563 F.3d 240, 242 (6th Cir. 2009) (en banc) (citing *Ross v. Moffitt*, 417 U.S. 600, 617 (1974)).

In *Nichols*, this court sitting en banc concluded that the defendant, Nichols, could not prevail on his ineffective assistance of counsel claim based on his counsel's failure to petition the Supreme Court for certiorari because defendants are not constitutionally entitled to the assistance of counsel in preparing petitions for certiorari. *Id.* at 248–51. Nichols's counsel did not raise an *Apprendi*-based argument challenging the Federal Sentencing Guidelines in submitting the sentencing memorandum in October 2002, in which he raised numerous other objections. At the time, this court had held that *Apprendi* required reversal "when the district court determined a fact that caused the defendant's sentence to exceed a *statutory* maximum or, under some limited circumstances, that required a *statutorily* mandated minimum sentence, without a jury determining the fact beyond a reasonable doubt." *United States v. Chapman*, 305 F.3d 530, 535 (6th Cir. 2002).

This court had several times rebuffed arguments that *Apprendi* applied to every fact that increases the defendant's sentence under the then-binding Federal Sentencing Guidelines. *See, e.g.*, *id.*; *United States v. Copeland*, 321 F.3d 582, 605 n.8 (6th Cir. 2003).

After being sentenced, Nichols appealed, challenging a jury instruction, but again making no mention of *Apprendi*. *United States v. Nichols*, 100 F. App'x 524, 526 (6th Cir. 2004). This court affirmed the district court judgment in June 2004. Then, nearly two weeks after this court issued its opinion and one day before Federal Rule of Appellate Procedure 40(a)(1)'s fourteen-day period to seek rehearing of that decision expired, the Supreme Court issued its decision in *Blakely v. Washington*, 542 U.S. 296, 303 (2004), holding that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (Citations and emphasis omitted.) Nichols's attorney did not move for rehearing or move to stay the mandate so that he could petition for rehearing out-of-time based on *Blakely*. Unlike his co-defendant's attorney, Nichols's attorney did not petition the Supreme Court for certiorari by the September 2004 deadline for him to do so to argue that *Blakely* should apply to the Federal Sentencing Guidelines.[1]

In August 2004, before Nichols's time to petition the Supreme Court for certiorari expired, the Supreme Court granted certiorari in *Booker*, a case posing the question of whether enhanced sentences pursuant to the Federal Sentencing Guidelines based on a judge's factual determinations violated the Sixth Amendment. In January 2005, the Supreme Court issued its opinion in *Booker*, holding that the mandatory Federal Sentencing Guidelines violated the Sixth Amendment. *United States v. Booker*, 543 U.S. 220 (2005). In light of *Booker*, the Supreme Court granted Nichols's co-defendant's petition for certiorari and remanded his case for resentencing. *See Smith v. United*

---

[1] Because this court entered judgment on June 11, 2004, Nichols and his co-defendant had until September 9, 2004, (i.e., 90 days) to petition the Supreme Court for certiorari. *See* Sup. Ct. R. 13(3).

*States*, 543 U.S. 1180 (2005). On remand, the district court reduced Nichols's co-defendant's sentence by nine months. *Nichols*, 563 F.3d at 245. This led Nichols to claim that he received ineffective assistance of counsel based on "his attorney's failure to argue that it was improper to enhance his sentence based on facts that had not been proved to a jury beyond a reasonable doubt." *Id.* at 246. Essentially, Nichols was arguing that his attorney was deficient because his counsel failed to move the panel to reconsider or to petition the Supreme Court for certiorari. *Id.* at 245.

But we rejected Nichols's argument that his counsel was constitutionally ineffective. The Sixth Amendment only guarantees the right to counsel at trial and on direct "first tier" appeal as of right. *Id.* at 248; *see Halbert v. Michigan*, 545 U.S. 605, 610 (2005). "[T]he Constitution does not entitle a defendant to the assistance of counsel for a discretionary appeal (e.g., a petition for certiorari)." *Nichols*, 563 F.3d at 248 (citing *Ross*, 417 U.S. at 617). This led us to reason that "where there is no constitutional right to counsel there can be no deprivation of effective assistance." *Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 752 (1991)). Thus, we concluded that Nichols could not demonstrate ineffective assistance of counsel due to his counsel's failure to petition the Supreme Court for certiorari because Nichols did not have a constitutional right to counsel at the petition-for-certiorari stage. *Id.*

Harper's attempt to distinguish *Nichols* is unavailing. Harper argues that his case is different because his appellate counsel actually did file a petition for certiorari whereas Nichols's counsel never filed such a petition. Harper contends that therefore once his attorney filed a petition for certiorari, his attorney's failure to amend his petition or supplement it after the grant of certiorari in *Dean* constituted deficient performance. But this reads *Nichols* too narrowly. *Nichols* did not solely determine that the failure to file a petition for certiorari cannot amount to constitutionally ineffective assistance of counsel. *Nichols* clearly establishes that there is no right

to counsel at the petition-for-certiorari stage and "where there is no constitutional right to counsel there can be no deprivation of effective assistance." *Id.* Such a right does not suddenly attach by virtue of Harper's counsel filing a certiorari petition. This would create the bizarre result that Harper's counsel could not be deemed constitutionally ineffective if the attorney had failed to even file a petition for certiorari, but opened the door to this possibility by actually filing a petition. Thus, the lack of a constitutional right to counsel at the petition-for-certiorari stage means that a defendant cannot show he received constitutionally ineffective assistance of counsel at this discretionary appeal stage.

Further, Harper argues that this court recognized in *Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir. 1999), that there may be instances in which "counsel's failure to raise an issue whose resolution is clearly foreshadowed by existing decisions might constitute ineffective assistance of counsel." But this cannot overcome the insurmountable hurdle of *Nichols*. Harper asserts that although *Franklin* foreclosed the *Dean*-type argument at the direct appeal stage, he was not precluded from raising this argument for the first time at the petition-for-certiorari stage. *Dean* was granted certiorari while Harper's petition was still pending, and Harper alleges that the grant of certiorari in *Dean* "clearly foreshadowed" a new resolution of this sentencing issue. Thus, Harper contends that his counsel was constitutionally deficient for not adding this *Dean*-type argument to his pending petition once the Supreme Court granted certiorari in *Dean*. But as discussed above, Harper did not have a constitutional right to counsel at the petition-for-certiorari stage, so he could not have been deprived of effective assistance at this stage even if such a foreshadowing would have constitutionally required counsel to raise the issue at the first-appeal level had the grant in *Dean* occurred earlier.

#### IV.  *Dean* is Not Retroactive on Collateral Review

Harper's alternative argument that *Dean* announced a new rule of law that applies retroactively also fails.  A new rule only applies retroactively on collateral review if "(1) the rule is substantive or (2) the rule is a watershed rule of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding."  *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (citing *Saffle v. Parks*, 494 U.S. 484, 495 (1990)); *see also Teague v. Lane*, 489 U.S. 288, 311 (1989).  The rule announced in *Dean* does not fit into either of these categories.

First, *Dean* is not a substantive rule.  "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes."  *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004) (citations omitted).  Harper contends that the rule set forth in *Dean* is substantive because it declared that sentencing courts are not prevented from considering the mandatory minimum sentence under § 924(c) when determining the appropriate sentence for the predicate offense for the class of defendants that have been convicted of an offense under § 924(c).  However, *Dean* did not prohibit the imposition of any form of punishment on a particular class of defendants.  The rule set forth in *Dean* is permissive—not mandatory.  When sentencing a defendant for a predicate § 924(c) offense, a sentencing court *may* consider the mandatory minimum sentence required by § 924(c).  But the court is not required to do so.  Sentencing courts remain free to ultimately impose the exact same sentences as they may have before *Dean*.  Accordingly, *Dean* did not proscribe the punishment of certain conduct or prohibit a category of punishment for any class of defendants because of their status or offense.  *Dean* therefore did not announce a new substantive rule.

Second, *Dean* is not a watershed rule of criminal procedure.  To be a watershed rule of criminal procedure, "a new rule must meet two requirements: Infringement of the rule must

'seriously diminish the likelihood of obtaining an accurate conviction,' and the rule must 'alter our understanding of the *bedrock procedural elements*' essential to the fairness of a proceeding." *Tyler v. Cain*, 533 U.S. 656, 665 (2001) (quoting *Sawyer v. Smith*, 497 U.S. 227, 242 (1990)). Harper contends that *Dean* announced a watershed rule of criminal procedure because it "'significantly improve[s] the pre-existing factfinding procedures' at sentencings in § 924(c) cases, which were limited at Harper's sentencing since the district court did not believe it had discretion to consider the mandatory nature of the three § 924(c) convictions relative to the sentence for the carjacking predicate and conspiracy offenses." But this does not demonstrate that *Dean* constitutes a watershed rule of criminal procedure. *Dean* has nothing to do with conviction accuracy. Rather, *Dean* was solely focused on sentencing courts' discretion to consider the mandatory minimum sentence under § 924(c) when imposing the sentence on the predicate offense. *Cf. Goode v. United States*, 305 F.3d 378, 385 (6th Cir. 2002). This is not the type of "profound and 'sweeping' change" that "alter[s] our understanding of the bedrock procedural elements essential to the fairness of a proceeding," as described in *Whorton*, 549 U.S. at 421 (citing *Sawyer*, 497 U.S. at 242). A decision that "left sentencing authority, albeit with increased discretion, with sentencing judges . . . could not have announced a 'watershed rule.'" *Duncan v. United States*, 552 F.3d 442, 447 (6th Cir. 2009).

Accordingly, *Dean* does not apply retroactively to cases on collateral review.

## V. Conclusion

For the reasons stated above, we affirm the judgment of the district court.